I INTRODUCTION
These are applications by the plaintiffs Fleet National Bank (Fleet) and First Union National Bank (First Union) pursuant to General Statutes § 36a-52 (d) for a temporary injunction against a temporary cease and desist order issued by the defendants, John P. Burke, banking commissioner (commissioner) of the state of Connecticut and the Connecticut department of banking (department). For the reasons that follow, the applications for a temporary injunction are denied.
 II FACTUAL AND PROCEDURAL HISTORY
The material facts underlying this action are not in dispute. The present case has its genesis in a letter dated August, 1995 from Fleet's attorney to the commissioner concerning Fleet's ability as a national bank to impose a surcharge on nondepositor customers for the use of its automated teller machines (ATMs). In a response letter dated September 14, 1995, the commissioner determined General Statutes § 36a-156 (a) specifically *Page 568 
authorizes "a bank that has established an ATM to impose a usage fee on other banks whose customers use [the establishing bank's ATM] to cover `a reasonably proportionate share of all acquisition, installation and operating costs.' [General Statutes § 36a-156 (a)]" The commissioner reasoned that § 36a-156 (a) therefore impliedly prohibited such bank from imposing an additional fee on nondepositor customers who use its ATMs.
Fleet filed a complaint against the commissioner in the United States District Court for the District of Connecticut seeking a declaratory judgment that the Connecticut ATM statutes, § 36a-155 et seq., do not prohibit it from imposing such surcharges on nondepositor customers who use its ATMs. Fleet also claimed that, to the extent that Connecticut's ATM statutes do apply to Fleet, they are preempted by federal law. Fleet also sought injunctive relief.
The district court judge, Arterton, J., agreed with Fleet on its first claim, but did not reach its preemption claim, and granted summary judgment in favor of Fleet. See Fleet Bank, N.A. v. Burke, United States District Court, Docket No. 3:97CV133 (JBA) (D.Conn. September 30, 1988). The United States Court of Appeals for the Second Circuit reversed, holding that federal question jurisdiction does not authorize jurisdiction over an action seeking first an interpretation of a state statute and second, if the construction is adverse to the plaintiff, a declaration that the statute is preempted by federal law. See Fleet Bank, N.A. v. Burke, United States Court of Appeals, Docket No. 98-9324 (2d Cir. November 9, 1998).
The Second Circuit remanded with direction to dismiss for lack of subject matter jurisdiction. Id.
After the expiration of a stay granted during the pending of an appeal, Fleet began imposing the surcharges until the issuance of the commissioner's temporary *Page 569 
cease and desist order dated November 10, 1998, which was effective on that date.
The commissioner's temporary order states in relevant part that: "First Union National Bank[1], Fleet National Bank and Bank Boston, N.A. cease and desist from imposing surcharges for the use of each such [Bank's] ATMs in Connecticut. . . ." The commissioner incorporated a finding that "the public welfare requires immediate action with respect to the respondent [Banks'] conduct." See General Statutes § 36a-52 (b). He offered to schedule a hearing on December 3, 1998, upon request of the banks to determine whether a permanent order should issue against them.
Fleet and First Union then filed these actions for a temporary injunction and contemporaneously filed actions in the United States District Court for the District of Connecticut seeking declaratory and injunctive relief claiming that the commissioner's cease and desist order violates their rights as national banks under the National Bank Act,12 U.S.C. § 21 et seq. Fleet and First Union also sought temporary restraining orders. United States District Court Judge Chatigny denied First Union's request for a temporary restraining order, while Fleet's request for a temporary restraining order remains pending before United States District Court Judge Arterton. The present applications were submitted to the court on the pleadings, briefs, affidavits and oral argument.
 III STANDARDS FOR ISSUANCE OF TEMPORARY INJUNCTION
A brief review of the well settled principles regarding the issuance of a temporary injunction would be helpful in placing this matter in context. *Page 570 
"A temporary injunction is a preliminary order of the court, granted at the outset or during the pendency of an action, forbidding the performance of the threatened acts described in the original complaint until the rights of the parties respecting them shall have been finally determined by the court." Deming v. Bradstreet, 85 Conn. 650, 659,84 A. 116 (1912). The primary purpose of a temporary injunction is to preserve the status quo and protect the moving party from immediate and irreparable harm until the rights of the parties can be determined after a full hearing on the merits. Olcott v. Pendleton, 128 Conn. 292, 295,22 A.2d 633 (1941). The plaintiffs, to be entitled to such relief, must show: (1) probable success on the merits of their claim; (2) irreparable harm or loss; and (3) a favorable balancing of the results or harm which may be caused to one party or the other, as well as to the public, by the granting or denying of the temporary relief requested. See GriffinHospital v. Commission on Hospitals Health Care, 196 Conn. 451,457-58, 493 A.2d 229 (1985) (Griffin Hospital 1).[2]
"The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court. . . . Scovillev. Ronalter, 162 Conn. 67, 74, 291 A.2d 222 (1971). See alsoInternational Ass'n. of Firefighters, Local 786 v. Serrani,26 Conn. App. 610, 616, 602 A.2d 1067 (1992). This is so, even where the danger of irreparable injury has been demonstrated. Hartford v. AmericanArbitration Assn. , 174 Conn. 472, 477, 391 A.2d 137 (1978).
Moreover, we must keep in mind the doctrine that "[c]ourts will act with extreme caution where the granting of injunctive relief will result in embarrassment *Page 571 
to the operations of government." (Internal quotation marks omitted).Wood v. Wilton, 156 Conn. 304, 310, 240 A.2d 904 (1968).
Although the plaintiffs did not furnish a bond pursuant to General Statutes § 52-472,[3] the court will assume, without deciding, that the plaintiffs have shown good cause for a waiver of a bond.
The court must analyze the facts proved by the plaintiffs in the light of the aforementioned principles, and determine, in the exercise of its discretion, whether a temporary injunction against the commissioner is warranted. The plaintiffs must show that they are in danger of sustaining substantial and immediate injury if the injunction is not granted. SeeLos Angeles v. Lyons, 461 U.S. 95, 101-102, 103 S.Ct. 1660,75 L.Ed.2d 675 (1983). Past injury alone is insufficient, although it may support the likelihood of future recurrences; but, to obtain an injunction, the plaintiffs must demonstrate either present continuing injury or the likelihood of future injury. O'Shea v. Littleton, 414 U.S. 488, 495-96,94 S.Ct. 669, 38 L.Ed.2d 674 (1974).
 IV DISCUSSION A Probable Success on the Merits
First, it is important to note that the plaintiffs have expressly reserved for federal court adjudication their *Page 572 
federal law preemption claims and their claim that the office of the comptroller of the currency (comptroller) has sole enforcement power over national banks' violations of regulatory requirements, including state consumer protection statutes, and that the commissioner is deprived of any authority to issue the cease and desist order against the plaintiffs. These claims are echoed in the amicus brief filed by the comptroller. In oral argument, however, despite the plaintiffs' explicit reservation of their federal claims, the plaintiffs appeared to assert that the strength of their federal claims bears upon, and increases, their probability of success on the merits.
The court respectfully declines to consider their federal claims and the argument of the comptroller. First, the court so declines because they are not in the pleadings. "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." Farrell v. St. Vincent's Hospital, 203 Conn. 554, 557,525 A.2d 954 (1987). "It is still the law that the right of a plaintiff to recover is limited by the allegations of the complaint. . . ." (Internal quotation marks omitted.) Kawasaki Kisen Kaisha, Ltd. v.Indomar, Ltd., 173 Conn. 269, 272, 377 A.2d 316 (1977). Thus, the plaintiffs cannot import their federal claims into the probability of success on the merits question, on the wings of the amicus brief. This is especially so when they have expressly reserved those claims for adjudication in the federal district court.
Furthermore, even if the plaintiffs' federal claims were a factor in the assessment of their chances on the merits, this is of no avail to the plaintiffs. Rather, their claims are undercut by United States District Judge Chatigny's denial of First Union's[4] request for temporary relief, after briefs and hearing oral argument. *Page 573 
The plaintiffs argue that the Connecticut ATM statutes do not expressly prohibit surcharges or even address transaction fees imposed on customers. The plaintiffs assert, therefore, that the commissioner could not find that the plaintiffs violated the ATM statutes in imposing the surcharges.
"Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to `accord great deference to the construction given [a] statute by the agency charged with its enforcement.'" (Citations omitted.) Griffin Hospital v.Commission on Hospitals Health Care, 200 Conn. 489, 496,512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S.Ct. 781,93 L.Ed.2d 819 (1986) (Griffin Hospital II), quoting Corey v. Avco-LycomingDivision, 163 Conn. 309, 326, 307 A.2d 155 (1972) (Loiselle, J.,
concurring), cert. denied, 409 U.S. 1166, 93 S.Ct. 903, 34 L.Ed.2d 699
(1973). "The agency's practical construction of the statute, if reasonable, is high evidence of what the law is." (Internal quotation marks omitted.) Board of Education v. State Board of Labor Relations,217 Conn. 110, 120, 584 A.2d 1172 (1991).
"We generally accord `deference to . . . time-tested agency interpretation of a statute, but only when the agency has consistently followed its construction over a long period of time, the statutory language is ambiguous, and the agency's interpretation is reasonable.'"Marone v. Waterbury, 244 Conn. 1, 9, 707 A.2d 725 (1998), quoting StateMedical Society v. Board of Examiners in Podiatry, 208 Conn. 709, 719,546 A.2d 830 (1988). "[W]hen a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." Starr v. Commissioner ofEnvironmental Protection, 236 Conn. 722, 736, 675 A.2d 430 (1996). "[W]here, as in this case, the construction of the statute *Page 574 
. . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . that construction constitutes a question of law for which is not warranted." (Citation omitted; internal quotation marks omitted.) Burinskas v. Dept.of Social Services, 240 Conn. 141, 147, 691 A.2d 586 (1977).
The commissioner argues that it is the absence of statutory authority to impose the surcharges that he relies upon in ordering the plaintiffs to cease and desist from doing so.
Section 36a-156 provides: "Availability of machines, devices and terminals for use by other banks and credit unions. (a) One or more banks, Connecticut credit unions or federal credit unions which have established a satellite device or point of sale terminal shall make the satellite device or point of sale terminal available on a nondiscriminatory basis for use by any other bank, Connecticut credit union or federal credit union, upon payment by each such other bank orcredit union of a reasonably proportionate share of all acquisition,installation and operating costs of the satellite device[5] or point ofsale terminal. The satellite device or point of sale terminal shall identify with equal prominence all of the banks, credit unions or network systems which use the satellite device or point of sale terminal.
"(b) Any bank, Connecticut credit union or federal credit union which has established an automated teller machine which is not a satellite device may, in its discretion, permit any other bank, Connecticut credit union or federal credit union to use such automated teller machine, provided, (1) if such permission is granted to any other bank, Connecticut credit union or federal credit union, the automated teller machine is made available on a nondiscriminatory basis for use by any *Page 575 
other bank, Connecticut credit union or federal credit union, upon payment of reasonably proportionate costs as described under subsection (a) of this section, and (2) such use is otherwise in accordance with subsection (a) of this section." (Emphasis added.)
The statute provides, therefore, that the use of ATMs in Connecticut by other than establishing banks is allowed only on a nondiscriminatory basis.
The commissioner, in his letter dated September 14, 1995, reasoned that as § 36a-156 allows such establishing banks to charge participating network banks "a proportionate share of the acquisition, installation and operating costs" of the ATM but is silent as to any other fees, such other fees including the plaintiffs' proposed surcharges are not permitted. The commissioner's construction is based in part on the maxim "expressio unius est exclusio alterius," which may be translated as "`the expression of one thing is the exclusion of another.'" Gay Lesbian LawStudents Assn. v. Board of Trustees, 236 Conn. 453, 476, 673 A.2d 484
(1996). As § 36a-156 already provides for payment of "acquisition, installation and operating costs," the legal presumption is that the legislature did not intend to include other charges. Had the legislature wanted to do so, it could have included such a provision.
This result is buttressed by a reading of the Deposit Account Contract Act (the act), General Statutes § 36a-315 et seq. General Statutes § 36a-316 (6) provides in pertinent part that "a charge may be imposed on a depositor for utilizing the services of a financial institution in connection with a deposit account, including a charge for . . . the use of . . . devices or methods that may be used to withdraw moneys from a deposit account. . . ." (Emphasis added.) The act was enacted in 1976, four years after the ATM statutes. See Public Acts 1975, No. 75-373; see also Public Acts 1979, No. 79-433. *Page 576 
"We are obligated . . . to read statutes together when they relate to the same subject matter. . . . This is because of the presumption that the legislature intended to create a harmonious body of law." (Citation omitted; internal quotation marks omitted.) State v. State Employees'Review Board, 239 Conn. 638, 653-54, 687 A.2d 134 (1997). Neither §36a-156 nor § 36a-316 (6) authorize an establishing bank of an ATM to levy a surcharge or fee of any kind upon a nondepositor customer.
The plaintiffs point to the United States district judge's contrary construction of § 36a-156 as persuasive. See Fleet Bank, N.A. v.Burke, supra, Docket No. 3:97CV133 (JBA). This reliance, however, is misplaced, as her decision was reversed and remanded by the Second Circuit[6] for lack of subject matter jurisdiction.
Our Supreme Court has held that "[o]nce it becomes clear that the trial court lacked subject matter jurisdiction to hear the plaintiff's complaint, any further discussion of the merits is pure dicta." (Internal quotation marks omitted.) Statewide Grievance Committee v. Rozbicki,211 Conn. 232, 246, 558 A.2d 986 (1989). "If subject matter jurisdiction is lacking, a trial court's rulings on the merits are merely advisory.'Lindo v. Lindo, 48 Conn. App. 645, 651, 710 A.2d 1387 (1998). Although not a precedent, Judge Arterton's ruling merits respectful and serious consideration. The court cannot find, however, that the plaintiffs have met their heavy burden of making a strong showing that the commissioner's interpretation of the ATM statute was erroneous, let alone clearly erroneous on the state of this abbreviated record, in this very close case. The plaintiffs, therefore, have failed clearly to demonstrate probable success on the merits. *Page 577 
 B Irreparable Injury
Fleet complains that while the commissioner's temporary order remains in effect, it will be deprived of approximately $15,000 in surcharge fees per day; First Union claims $10,000 per day. The commissioner promised a full hearing on the merits of the matter on December 3, 1998 and must render a decision within ninety days after the completion of the hearing. The commissioner has also offered an expedited hearing and briefing schedule, and has also offered to reschedule the hearing to a date even earlier. Thus, the plaintiffs' estimated losses appear to be finite, of short duration and limited to money. As a general rule, a party may not obtain injunctive relief where it claims a loss of profits. As the plaintiffs conceded, and they do not claim, that the plaintiffs would become insolvent, or that their existence or continuation as ongoing businesses is threatened, or that they will need to close branches or lay off staff, should they be deprived of the surcharge income they seek, as was the plaintiff's situation in Griffin HospitalI. Moreover, as the amount of ATM fees is not regulated by any agency, should the plaintiffs ultimately prevail on their state or federal claims, they would be able eventually to recoup their losses in the future by adding a small "surcharge" to the one dollar surcharge they now propose.
It is not irreparable harm to incur a loss of profits which may be recovered through other business ventures. See Instant Air Freight Co.v. C.F. Air Freight, Inc., 882 F.2d 797, 802 3d Cir. 1989). "Moreover, [w]ith out intending to disparage the importance of such an injury, we observe that all that is lost is profits. Any time a corporation complies with a government regulation that requires corporation action, it spends money and loses profits; yet it could hardly be contended that *Page 578 
proof of such an injury, alone, would satisfy the requisite for a preliminary injunction." (Emphasis added.) International Dairy FoodsAss'n. v. Amestoy, 898 F. Sup. 246, 251 (D.Vt. 1995), citing A.O. Smith Corp. v. FTC, 530 F.2d 515, 527 (3d Cir. 1976).
On the other hand, it must be observed that the violation of a statute ordinarily presumes irreparable harm. See Gelinas v. West Hartford,225 Conn. 575, 588, 626 A.2d 259 (1993); Conservation Commission v.Price, 193 Conn. 414, 429, 479 A.2d 187 (1984).
Simply put, the plaintiffs have not demonstrated irreparable injury.
 C Balancing of Harm
The commissioner found that the public welfare requires immediate action. This finding is based on the financial costs to the public of the plaintiffs' proposed surcharges, which, when aggregated, amount to a total of approximately $25,000[7] per day. As the plaintiffs control more than thirty percent of the ATMs in the state, this would constitute a significant financial drain on the public. Moreover, the commissioner determined that plaintiff Fleet advised ATM users (while Fleet was imposing surcharges) that nondepositor customers could avoid the same by becoming Fleet depositors. The commissioner concluded that this was anticompetitive and could put pressure on users to become Fleet depositors to the detriment of banks with smaller ATM networks. The commissioner also concluded that given the concentration of ownership of ATMs by the plaintiffs, the ability of Connecticut consumers to use nonsurcharging ATMs could be severely limited. The plaintiffs argue *Page 579 
that they will establish a mechanism to ensure that each depositor charged a surcharge will be identified and adequate records will be kept to ensure a refund to the nondepositor's bank should the commissioner's view prevail. The commissioner points out, however, that this does not guarantee refunds to the user, as users may move, change bank accounts and so forth, and will transfer the burden of making the refunds to the nondepositors' banks.
Concededly, the financial loss anticipated by the plaintiffs if they are not permitted to surcharge nondepositor ATM users is much greater in the aggregate than to individuals who may voluntarily (at least after they become aware of it) self-inflict such surcharges upon themselves.
In light of the large amount of money involved, the commissioner's determination that the public welfare requires immediate action is entitled to great deference. See Board of Education v. State Board ofLabor Relations, supra, 217 Conn. 120. Moreover, the court cannot find that the commissioner's prediction of the anticompetitive consequences, if the imposition of such surcharges were permitted, is unreasonable under the circumstances of the present case.
It is not for this court to "second guess agencies on the danger to the public interest or welfare. . . . Dept. of Transportation v. Pacitti,43 Conn. App. 52, 58, 682 A.2d 136, cert. denied, 239 Conn. 937,684 A.2d 707 (1996).
In balancing the results and harm to the parties, the public and the banks with smaller ATM networks, the court concludes that the plaintiffs have not sufficiently or clearly shown that the balancing of the results or harms weighs in their favor. *Page 580 
 V CONCLUSION
"It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstance. . . . Restraining the action of an individual or a corporation by injunction is an extraordinary power, always to be exercised with caution, and never without the most satisfactory reasons." Anderson v. Latimer Point Management Corp. ,208 Conn. 256, 262, 545 A.2d 525 (1988) (Citation omitted; internal quotation marks omitted). Even greater caution must be exercised and more compelling reasons must exist for the court to issue an injunction to a named public official who is presumed to have acted lawfully in the first place. See Wood v. Wilton, supra, 156 Conn. 310
Having considered all of the Griffin Hospital I factors, the court finds that the plaintiffs have not clearly demonstrated such compelling reasons for the granting of a temporary injunction against the commissioner's temporary cease and desist order.
 Accordingly, the plaintiffs' applications for a temporary injunction must be, and are, denied.