[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15702
Ambel Precision Manufacturing (hereinafter "Ambel") and L R Company are the tenant and the owner, respectively, of property located at 159 Grassy Plain Street in Bethel, Connecticut. Ambel utilizes its leasehold for the manufacture of parts for the aerospace, medical and defense industries, has an option to purchase the property from L R, and must register its intent or its notice of its intent to purchase the property no later than June of the year 2003. L J Pools, Inc. ("L J. Pools") is the owner of adjoining property immediately to the north carrying the designation Grassy Plain Street. It also sells and installs in-ground swimming pools as well as doing general contracting work. Both properties are located in an area which is zoned for industrial uses in accordance with the Bethel Zoning Regulations.
In the year 1995 or 1996, the defendant Fiorilla, who owns L J Pools, purchased and relocated a portable machine used to load the ingredients of concrete into delivery trucks to his business establishment at 155 Grassy Plain Street. This portable machine is known as a "batch plant." His reason in purchasing the machine, or the batch plant, was as a result of the problems he was experiencing in securing a reliable and adequate supply of concrete for his pool business from local sources. It has also been used to load dry materials of concrete onto delivery trucks for projects of L J Pools not related to swimming pool construction for sale to the public. Water is loaded and transported separately in the concrete delivery trucks and is mixed with the dry ingredients shortly before the concrete is poured. The sale of concrete to the public has not resulted in any increase in the number of concrete delivery trucks using the batch plant or to any increase in the number of employees working for the defendants. The batch plant uses the same materials and is operated in the same manner whether it is loading a truck for L J Pools to build a pool or for delivery to a retail customer or contractor.
Ambel employees and management instituted complaints to the zoning enforcement officer of the town of Bethel about the operation of the batch plant in 1996. These complaints primarily alleged that dust was CT Page 15703 blowing off the batch plant and landing on the cars of the employees of Ambel when loading materials. In what is characterized as a more serious incident, an employee being trained to work in the batch plant made a mistake in loading materials, which resulted in sand being deposited onto 159 Grassy Plain Street. In order to avert a similar incident in the future, Fiorilla installed a fence running along the boundary line that was higher than the batch plant and promptly cleaned up the material which had spilled or run over to 159 Grassy Plain Street. He has installed a dust collector over the batch plant, but the employees and management at Ambel still insist that dust from the batch plant is regularly being deposited on and is damaging the finish of their automobiles while parked at the property line.
Twenty-two employees of Ambel, including Giuseppi Lombardo and Emile Roland, the owners of L R, have filed suit against L J Pools claiming that emissions from the operation of the batch plant created a nuisance and resulted in trespass "causing permanent damage to the exterior and interior of said automobiles" which are owned by their employees. That litigation is known as Douglas Barry, Jr. v. L J Pools, Inc. and is pending in this court under the docket number 336815. Ambel is a co-plaintiff in this litigation and claims that its equipment and machinery have been damaged and/or has required maintenance and repair from these emissions. The only relief Ambel and its employees are seeking in the Douglas Barry litigation is "monetary damages."
Prompted by earlier complaints from Ambel, the Bethel Planning Zoning Commission considered the use of 155 Grassy Plain Street on June 11, 1996, during its regular meeting for that date. The batch plant is in the same location and is being used in the same way for the same purposes as it was at the time of that meeting. The commission confirmed that the defendants have the right to operate the batch plant to load concrete for use by L J Pools in pool construction. Unfortunately, the commission failed to issue a decision and take a formal motion or vote thereon. It is the defendants' position that the commission reviewed and approved the use of the batch plant for the sale of concrete to the public in its current location during that meeting of June 11, 1996. No other action was taken in response to the complaints by the zoning enforcement officer.
One Joseph Potenza, who is the current zoning enforcement officer of Bethel, has been much more attentive to Ambel's complaint and has issued two cease and desist orders as well as commencing an enforcement action against the defendants in an attempt to eliminate the alleged zoning violations relating to the business conducted at 155 Grassy Plain Street. As might be anticipated, the defendant has appealed the issuance of the cease and desist order, and that appeal is currently pending in CT Page 15704 this district under docket number 340012. Potenza has also filed an application for a temporary injunction, which was denied after a hearing under docket number 336810, also in this judicial district.
Injunctive relief is appropriate if an applicant can demonstrate irreparable harm, the absence of an adequate remedy of law, and with a temporary injunction, the likelihood of success upon the merits. Nevertheless, the issuance of such a remedy lies within the sound discretion of the trial court. Walton v. New Hartford, 223 Conn. 155,165; Scoville v. Ronalter, 162 Conn. 67, 74. The essence of a temporary injunction is the preservation of a status quo and the protection of the moving parties from immediate and irreparable harm until the rights of the parties can be resolved after a full hearing on the merits. Olcottv. Pendleton, 128 Conn. 292, 295; Fleet National Bank v. Burke,45 Conn. Sup. 566, 570. The plaintiffs' complaint alleges that Fiorilla is operating two of these businesses under a trade name. The defense contradicts this by asserting that these entities are owned and operated by limited liability companies which have not been named as parties to this litigation. This assertion was never refuted by the plaintiffs.
The plaintiffs instituted this proceeding in four counts. The first of these alleges a violation of the Bethel Zoning Regulations and State Air Quality and Emission Standards. This alleged use of the property is claimed to create a nuisance that" substantially interferes with the plaintiffs' peaceful use and enjoyment of the Ambel property." It further alleges a health risk to employees and business visitors. The second of the four counts recites the same violations as set forth in the first count and expands that claim by asserting that dust, gravel, grit, diesel exhaust and other particles continue to emanate daily from the premises onto the Ambel property, damaging the property and its employees by traveling inside the building occupied by Ambel and otherwise interfering with the plaintiffs' reasonable use and enjoyment of the Ambel property. That predicate supposedly supports a claim for trespass. The third again repeats the allegations of the first two counts, concludes that "[t]he use of the Premises and the operation of the Concrete Plant by the Defendants L J and FIORILLA involves conduct that is reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the State of Connecticut . . . due to the pollution of the air and water and the destruction and impairment of wetlands, watercourses and other environmentally sensitive habitats." The fourth and final count incorporates the first nineteen paragraphs of the previous counts and claims that the use of the property violates the zoning regulations of the town of Bethel and irreparably injures the plaintiffs' use and enjoyment of the Ambel property. There is no allegation, however, that the defendants' use of the 155 Grassy Plain Street property constitutes a CT Page 15705 nuisance in that count.
Sections 118-34 and 118.381 of the Bethel regulations mandate the submission and approval of a site plan prior to the use of any land or construction, alteration or enlargement of any building or other structures thereon. Noncompliance with this requirement constitutes a violation of the regulations and precludes the issuance of an applicable certificate of zoning compliance, certificate of occupancy and/or building permit. Therefore, the applicant argues that sections 118-52 et seq. of the regulations of the use of the concrete plant at the premises without the necessary permits and approvals violates the regulations and is not permitted thereunder. The concrete plant has been operating without any permits or approvals. However, on January 5, 1988, a site plan was submitted, and it was revised on February 5 of 1988, which was approved by the Bethel Planning Zoning Commission February 9, 1988, but it does not depict any of the structures, buildings and/or uses related to the concrete plant, nor does it depict any storage area for the concrete, sand and stone material used in the operation thereof, nor the parking area for the four concrete mixing trucks. The site plan shows the area now occupied by the concrete plant as a paved parking area and the area now occupied by storage materials as a landscaped area. There can be no question there has been no compliance with the regulations of the approved site plan. Bethel Zoning Regulations, section 118-52 et seq. The applicant continues on and clearly establishes several other violations of the regulations.
The defendants would respond that the operation of the batch plant is indeed an accessory use to the pool business. However, the evidence clearly establishes that the production of concrete greatly exceeded the needs of the pool operation and that the sale of concrete was not limited to L J Pools and its customers but was sold to any person for all types of projects involving concrete. On August 18, 1999, the town of Bethel issued a cease and desist order directed against the defendants L J Pools and Fiorilla to stop the operation of the concrete plant at the premises. Apparently, no appeal was taken from the issuance of that order.
The court is satisfied arguendo that the applicant has indeed established a violation of the Bethel regulations. The fact that the applicant may well have established such a violation does not, however, entitle it to a temporary injunction. This is not a case where a municipality (Bethel) is seeking an injunction against a zoning violation and is therefore relieved of the normal burden of proving irreparable harm and the lack of an adequate remedy at law. See Gelinas v. WestHartford, 225 Conn. 575, 588. The heart of the issues requires a determination as to whether or not irreparable harm is occurring which CT Page 15706 must be eliminated. Ambel, of course, asserts that it has established such injury and claims that Fiorilla's testimony is unworthy of belief. It also invokes the concept of potential injury. The only significant testimony with respect to air quality regulations was elicited from the defendants' expert, one Dithrich, who purports to be a Senior Project Engineer of Airtox. The court concedes that his testimony was not the most persuasive in the world, but nevertheless, it does not find that testimony unworthy of belief in all respects. He did testify without objection finally that he found no significant fugitive emissions from Fiorilla Ready Mix operations.
Ambel's evidence established the existence of dust flying and penetrating the office on one occasion and residue on the vehicles of employees and, to some extent, invitees. No evidence, however, was offered to show any extensive injuries of any kind that require compensation. The complaints of employees about their personal property, specifically their vehicles, while quite annoying, fail to establish a nexus to find such injuries are occurring to Ambel. In short, they have not demonstrated that any violation of the zoning regulations by the defendants pose any immediate threat to their business or property and have not shown they have a probability of prevailing at trial. One instance was offered with respect to the claim of trespass, the time the inexperienced operator of the plant deposited sand on L R's property several years ago. The defendants had it removed promptly and constructed a fence along the property line to prevent similar occurrence. This incident was never established to be intentional, and it has never occurred again. That evidence, including the lapse of time since this specific incident, has not enabled the plaintiff to meet its burden on this charge.
There is no evidence that has been offered that suggests any machinery or equipment owned or operated by Ambel or L R was damaged by emissions from the defendants' property. Had that been the case, action for damages would be satisfactory and would compensate the plaintiffs adequately in the absence of any specific and unique damage, which was certainly not established at this hearing. See Cretaro v. Equitec Real Estate InvestorsFund XII, 6 Conn. App. 317, 319.
In conclusion, the court is not satisfied that the applicants have met their burden and are entitled to the relief they seek. This evidence is insufficient to permit this court to find there is a probability of success at trial. It also notes in passing that there is a cease and desist order against these defendants which was issued on August 18 of 1999, which appears to be in full force and effect. That, however, is a gratuitous comment. The application for a temporary injunction is, accordingly, denied. CT Page 15707
Moraghan, J.T.R.