[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Avery Dennison Corporation, is a Delaware corporation with its principal place of business in California. The plaintiff is a manufacturer and distributer of office products and writing instruments, including high-lighters and pens. On September 17, 2001, the plaintiff brought this action against the defendants, Donald Finkle and Bic Corporation. Donald Finkle was employed by Avery Dennison as director of product development and engineering[1] from January 29, 1998 until he resigned from the position in early September 2001. Donald Finkle had accepted an offer of employment with Bic Corporation.[2] Bic Corporation has its principal place of business in Connecticut. Bic is a CT Page 1317 manufacturer and distributor of lighters, shavers and writing instruments, including high-lighters and pens.
The complaint is in four counts. Count one alleges that Donald Finkle breached his written employment agreement with Avery Dennison by accepting the position with Bic, a direct competitor of Avery Dennison.[3] Count two alleges the Donald Finkle's employment with Bic will cause misappropriation of Avery Dennison's trade secrets in violation of General Statutes § 35-51 et seq..[4] Count three alleges that Bic has tortiously interfered with the contractual relationship between Avery Dennison and Donald Finkle by employing him in a capacity similar to the one he held with Avery Dennison and by inducing him not to comply with the noncompetitive employment provision of his written employment agreement with Avery Dennison. Count four alleges that Bic's employment of Donald Finkle will cause misappropriation of Avery Dennison's trade secrets in violation of General Statutes § 35-51 et seq.
Simultaneous with the filing of the complaint, the plaintiff moved for a temporary injunction.[5] The application requests, pursuant to the employment agreement and general Statutes § 35-52, that Donald Finkle be enjoined from accepting employment from Bic, or from acting in an advisory capacity dealing with the manufacture or sale of writing instruments. The application also requests, pursuant to General Statutes § 35-52, that Bic be enjoined from so employing Donald Finkle or from using trade secrets improperly obtained. In support of the application for temporary injunction, the plaintiff has filed a memorandum of law and a post-hearing memorandum. In opposition, both defendants have filed a memorandum of law containing the affidavit of Donald Finkle, the employment agreement, Avery Dennison's employee check out form and Bic Corporation's business code of ethics, as well as a post-hearing memorandum. Donald Finkle has filed a supplemental memorandum. An evidentiary hearing was held on October 1, 2001, when the court heard the testimony of Steven Raskin, the director of marketing for the writing instrument business of Avery Dennison. The defendants presented no witnesses.
"A temporary injunction is a preliminary order of the court, granted at the outset or during the pendency of an action, forbidding the performance of the threatened acts described in the original complaint until the rights of the parties respecting them shall have been finally determined by the court. . . . The plaintiffs, to be entitled to such relief, must show: (1) probable success on the merits of their claim; (2) irreparable harm or loss; and (3) a favorable balancing of the results or harm which may be caused to one party or the other, as well as to the public, by the granting or denying of the temporary relief requested." CT Page 1318 (Citations omitted; internal quotation marks omitted.) Fleet NationalBank v. Burke, 45 Conn. Sup. 566, 570, 727 A.2d 823 (1998). Our Supreme Court has impliedly acknowledged that the requirements for a temporary injunction are (1) the plaintiff had no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent an injunction; (3) the plaintiff was likely to prevail on the merits; and (4) the balance of the equities favored an injunction. See Waterbury Teachers Assn. v. Freedomof Information Commission, 230 Conn. 441, 446, 645 A.2d 978 (1994). The primary purpose of a temporary injunction is to preserve the status quo and protect the moving party from immediate and irreparable harm until the rights, of the parties can be determined after a full hearing on the merits . . . Rustici v. Malloy, 60 Conn. App. 47, 56, 758 A.2d 424, cert. denied, 254 Conn. 952, 762 A.2d 903 (2000). A trial court is afforded broad discretion in deciding whether to issue an injunction.Bauer v. Waste Management of Connecticut, Inc., 239 Conn. 515, 534,686 A.2d 481 (1996).
The application for a temporary injunction requests, pursuant to General Statutes § 35-52, that Donald Finkle be enjoined from accepting employment from Bic, or from acting in an advisory capacity dealing with the manufacture or sale of writing instruments and that Bic be enjoined from so employing Donald Finkle or from using trade secrets improperly obtained.[6] General Statutes § 35-52 provides, in part, "[a]ctual or threatened misappropriation [of trade secrets] may be enjoined upon application to any court of competent jurisdiction." The question whether information sought to be protected by the trade secrets act is, by definition, a trade secret under the act is "one of fact for the trial court." Allen Mfg. Co. v. Loika, 145 Conn. 509, 516, 144 A.2d 306
(1958). Although a former employee can, absent a restrictive covenant, compete with a former employer, "the employee remains subject to a duty not to use trade secrets, or other confidential information, which he has acquired in the course of his employment, for his own benefit or that of a competitor to the detriment of his former employer." Id., 514. General Statutes § 35-51 (d) defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." A trade secret has also been defined as a "formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 538, 546 A.2d 216
(1988). The court must, therefore, determine whether the information CT Page 1319 sought to be protected by the plaintiff falls within the statutory definition of a trade secret.
The court finds that as a result of the management, level and leadership position of Donald Finkle at Avery Dennison, he had direct access to, and in some instances contributed to the formulation of, procedures and information relating to concept testing data, including "dead ends," pertaining to writing instruments being developed during his employment at Avery Dennison.[7] Concerning product development, Donald Finkle also, had access to the business plan of Avery Dennison, including projected product revenues, marketing support and profitability estimates, component part suppliers and original equipment manufacturers, as well as capital investment information. All of this knowledge would comprise trade secret information as defined in General Statutes § 35-51 (d), as long as the other requirements of the statute are satisfied.[8]
The independent economic value requirement of the statute has been interpreted to be something which gives the owner of it a competitive advantage. See Elm City Cheese Co. v. Federico, 251 Conn. 59, 88 n. 27,752 A.2d 1037 (1999). The court finds that the knowledge of these areas of Avery Dennison's product development and concept testing would have actual or potential independent economic value to its competitors in the writing instrument area, including Bic, due to "innovator's premium," or the likelihood of increased distribution of, and being able to charge a premium price for, a new, innovative product.
As to the use of reasonable efforts by Avery Dennison to maintain the secrecy of the information, "reasonable efforts to maintain secrecy often include some of the following techniques: requiring employees to sign confidentiality agreements or otherwise advising them of the confidential nature of the process; posting of warning or cautionary signs, or placing legends on documents; taking precautions regarding visitors, by requiring them to sign confidentiality agreements, having them sign in, and shielding the process from their view; segregating information, so that no one person or written, source discloses the entire manufacturing process; and using unnamed or coded ingredients." (Internal quotation marks omitted; citations omitted.) Elm City Cheese Co. v. Federico, supra, 251 Conn. 79. The court finds that Avery Dennison, by having employees such as Donald Finkle sign non competition provisions as contained in paragraph eight of their employment agreement, by having suppliers, where possible, sign nondisclosure agreements,[9] by having workers keep logs as to the products on which they work, by giving employees yearly refresher courses in intellectual property and trademarks, by using "read only" files to prevent printing of the business plan and by having employees such as Donald Finkle sign the CT Page 1320 employee check out form when they end their employment,[10] has used reasonable efforts under the circumstances to maintain the secrecy of its trade secret information.
The court finds that the procedures and information relating to concept testing data, including "dead ends," pertaining to writing instruments being developed, the product development information, the business plan, including projected product revenues, marketing support and profitability estimates, component part suppliers and original equipment manufacturers, as well as capital investment information comprise trade secret information of Avery Dennison as defined under General Statutes § 35-51 (d).
General Statutes § 35-52 permits a court to enjoin actual or threatened misappropriation of trade secrets. Acquisition of Avery Dennison's trade secret information by Bic and disclosure of the information by Donald Finkle would constitute misappropriation, in that the information was obtained by Donald Finkle while he was employed by Avery Dennison and in which he had a duty to Avery Dennison to maintain its secrecy.[11] However well intentioned the defendants may be, it seems virtually impossible for Avery Dennison's trade secret information, particularly as to "dead ends," to not affect the employment relationship of Donald Finkle while in the employ of Bic. From the evidence submitted, the court finds that it is likely or probable that the plaintiff will be successful in showing, at a minimum, a threatened misappropriation of trade secrets by the defendants in Bic Corporation's employment of Donald Finkle in a capacity dealing with the manufacture or sale of writing instruments. The plaintiff has no adequate legal remedy and will suffer irreparable harm if the temporary injunction were not to issue at this time. Balancing the equities, the court finds that more harm would be suffered by Avery Dennison not to issue the temporary injunction sought at this time, than the harm that would be suffered by the defendants should the remedy sought be issued.[12] This is particularly true in light of the contractual provision between Avery Dennison and Donald Finkle, wherein Avery Dennison is obligated to compensate Donald Finkle at a rate of two thirds of his base monthly salary. This compensation should continue at least during the period covered by the order of the court, not to exceed the contractual two year period.[13]
The court, therefore, orders that Donald Finkle be temporarily enjoined from continuing employment with Bic in any capacity dealing with the manufacture, product development or engineering of writing instruments. Bic is also temporarily enjoined from so employing Donald Finkle and from using any trade secrets which may have been obtained from Donald Finkle prior to the order of the court. This order does not affect the ability of CT Page 1321 either defendant to enter an employment relationship in any other aspect of Bic's business, including, but not limited to, the production of shavers and lighters. The temporary injunction shall continue until a full decision on the merits of this matter is entered, or until further order of the court, but in no event shall the order continue any later than two years from the date Donald Finkle terminated his employment with Avery Dennison.[14] As it is the decision of the court that a temporary injunction shall issue pursuant to the trade secrets act, no decision is made as to the claims of the plaintiff under paragraph eight of the employment agreement.
The plaintiff is ordered to post a bond in the amount of (One-hundred-fifty-thousand dollars) $150,000. with sufficient surety.
MORAN, J.