[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPLICATION FOR TEMPORARY INJUNCTION
The plaintiff Pilar Davila is the owner of slightly less than four acres of residential property located on the east side of West Road in New Canaan, Connecticut and known as 595 West Road. The defendant Bump, LLC (Bump) owns approximately five and a half acres of residential property to the east of the Davila property known as 559 West Road. The Bump property does not front on West Road. However, it is the beneficiary of a right of way approximately fifty feet in width and 280 feet long which extends westward from the Bump property over the southern portion of the Davila property to West Road.
In 2001 Davila sued Bump and a general contractor, defendant B D Developers, Inc. (B D), alleging that they had cut down trees, begun erecting a wall and gate at the West Road end of the right of way and had advised Davila of plans to landscape on, and bury an electrical conduit under, the right of way. Davila also alleged that Bump improperly conveyed to the defendant, Connecticut Light Power Co. (CLP), an electrical distribution easement over the right of way. Davila's amended complaint seeks a temporary and permanent injunction, a declaration of rights and money damages arising from the defendants alleged trespass and unlawful acts.
The matter came before the court on Davila's application for a temporary injunction. A temporary injunction is a court order issued at the outset or during the pendency of a case forbidding the performance or continuance of certain acts until the rights of the parties have been finally adjudicated. Deming v. Bradstreet, 85 Conn. 650 (1912). The primary purpose of a temporary injunction is to preserve the status quo
and protect the moving party from immediate and irreparable harm until the merits of the case have been determined after a full trial. Olcottv. Pendleton, 128 Conn. 292 (1941). To be entitled to the equitable relief of a temporary injunction Davila, as the moving party, must show that: (1) she is likely to prevail on the merits of her claim after CT Page 11213 trial; (2) she faces immediate and irreparable harm absent an injunction, and (3) the harm she faces without the injunction is greater than the harm an injunction would do to the defendants. Griffin Hospitalv. Commission on Hospitals and Health Care, 196 Conn. 451, 456-458
(1985); see generally Fleet National Bank v. Burke, 45 Conn. Sup. 566,570 (1998).
 I — FACTS
The following facts are found based on a written stipulation of facts, with exhibits, between the parties marked as Court Exhibit 1 at the hearing on the temporary injunction application (Stipulation) and the testimony and other exhibits introduced through witnesses.
A. History
In 1945, John Mulliken conveyed property to Harry and Mabel Haeberlyby way of two deeds. The first deed contained the following language.
 "Reserving to said John H. Mulliken, individually, his heirs and assigns, a Right of Way over a strip of land 50 feet, more or less, in width and being the strip of land designated "Right of Way" on the map referred to in said deed".
 The premises are conveyed together with the appurtenances and subject to the matters specified in said deed from John H. Milliken, individually, to Harry H. Haeberly, Jr. and Mabel C. Haeberly.
The deed referred to is the second Mulliken to Haeberly deed. (Stipulation, ¶ 7, Ex.F.)
The second deed contained the following language.
 "The Grantor herein reserves unto himself, his heirs and assigns, as an appurtenance to his land bounding the premises hereby conveyed on the East, a right of way for all lawful purposes to and from West Street, in, over and upon a strip of land approximately fifty (50) feet in width and being the strip of land shown and designated on said map as "Right of Way"; but no responsibility is hereby imposed upon or assumed by the grantees, for the construction of a roadway over said strip of land and no liability is imposed upon or CT Page 11214 assumed by the grantees with respect to any matter growing out of the use of said strip as a right of way appurtenant to said adjoining land of the grantor."
The map referred to is map 1189 recorded in the New Canaan land records which clearly shows an area on the plot deeded to the Haeberlys marked "right of way" extending eastward from West Road (then West Lane) to the land retained by Mulliken. (Stipulation, ¶ 8, Ex H.)
The plaintiff, Davila, now owns the bulk of the Haeberly plot including the area designated as "right of way". In 2000, land to the east of the Davila parcel and immediately adjacent to the eastern end of the right of way was conveyed to Bump. The deed to Bump made reference that it was conveyed with "all the beneficial interests in and to a right of way" described in the two Mulliken — to — Haeberly deeds. Without going into excruciating detail the parties agree and the court concludes that Bump is the beneficiary of the right of way over the Davila land. (See Stipulation, ¶ 10, 11, 12, 16.)
B. Recent Developments
For many years the right of way contained an asphalt driveway and utility wires overhead both leading to a small residence on what is now the Bump property, but was otherwise generally unimproved. The property owned by Bump is presently being redeveloped for a large (25,000 square foot) single family residence replacing the smaller house. (Stipulation, ¶¶ 3, 17, 18.) In October 2000, B D, with Davila's permission, cut down a mature tree located at the east end of the right of way. (Stipulation, ¶ 19.) The apparent rationale for cuffing the tree was that its branches blocked use of the driveway by large trucks. (T.14-15.)[1] Later in the month B D, without permission, cleared the southern portion of the right of way of scrub trees, bushes and shrubbery and cut down two mature trees at the west end of the right of way. (Stipulation, ¶ 20; T. 15.-16.)
In March of 2001 William Luckie, a principal of B D, spoke to James Bettridge, a cabinet maker, who acts at times as a caretaker of the Davila property and outlined Bump's and B D's plans for the right of way. These included: the previously discussed cutting of scrub and trees, laying a buried electrical conduit the length of the right of way to the Bump property, planting a number of ten to twelve foot spruce trees and lower shrubbery along the southern border of the right of way, removing the existing driveway and building a new, straighter asphalt driveway with Belgian block curbing and apron, and installing a sprinkling system for the new trees and shrubs. (Stipulation, ¶ 21.) CT Page 11215 Bettridge also testified that Luckie told him of plans to construct two concave stone walls at the West Road end of the right of way to anchor a metal gate across the driveway. (T. 21-23.) The plan to construct the two walls, the new driveway and landscaping was confirmed by Luckie, although he denied any plans for a gate. (T. 42-44, Ex 3.)
During 2001 a number of trucks and equipment related to the construction on the Bump property were parked on the right of way. (T. 28-29). For at least the last few years Davila has used the right of way as an entrance for certain service people to come to her property and park their vehicles. (T 31-32).
 II — DISCUSSION
Davila applies for a temporary injunction enjoining the defendants from (1) removing any trees, shrubbery or other vegetation from the right of way (2) constructing or erecting any roads, walls, fences, gates or other structures or planting any trees, shrubs or vegetation within the right of way and (3) interfering with her use and enjoyment of the right of way. The resolution of these claims involves a determination of the character, scope and extent of the right of way in question.
The Connecticut Appellate Court has recently restated the rules of interpreting easements created by deed
 To determine the nature of an easement created by deed, we must discern the intention of the parties to the deed by considering the language of the deed, the situation of the property and the surrounding circumstances. . . . We give the language of the easement its ordinary import where nothing in the situation or surrounding circumstances indicates a contrary intent. . . . The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in reading it in the light of the surrounding circumstances . . . and its interpretation present[s] a question of law . . . In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view. (Citations omitted; internal quotation marks omitted)
CT Page 11216
Hoffman Fuel Co. of Danbury v. Elliott, 68 Conn. App. 272, 279-280 (2002) [quoting from Ezikovich v. Linden, 30 Conn. App. 1 cert. denied225 Conn. 919 (1993)]. See also Mackin v. Mackin, 186 Conn. 185, 189
(1982). The language in the Mulliken — Haeberly deeds is a general grant of a right of way without any specific restrictions. The right of way is granted "for all lawful purposes" "in, over and up on" the fifty foot wide strip of land. The defendants contend that a right of way granted in general terms allows to them essentially an exclusive right to do whatever they want within the right of way area and bars any use of the right of way by the plaintiff. See Exhibit B to Complaint; Def. Memo. (April 29, 2002) at 7, 9.
Defendants' contention is not consistent with the law of Connecticut. Initially, the court notes that the express grant in the deed does not convey any exclusive rights or other indication that the burdened property (Davila property) is specifically limited in any fashion with respect to the right of way. Absent any such expressed intent "[t]he rights of an easement owner and the owner of the servient tenement are correlative". Connecticut Light Power Co. v. Holson, 185 Conn. 436, 443
(1981). Indeed, the Holson court cited with approval comment (a) to Section 486 of the Restatement of Property (1944) which states where precise definition of the rights of the easement owner and servient tenement owner is absent (e.g. no language giving the easement owner exclusive or sole rights) there is a presupposition that the servient tenement owner retains rights and privileges that maybe exercised in the right of way[2]. The most recent Restatement formulation, which the Reporter notes is "the same" as originally set forth in Section 486 states
 Except as limited by the terms of the servitude . . . the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude
Restatement of Property Third (Servitudes) Sec. 4.9.
Having determined that Bump is not the only party having rights in the right of way the court now turns to Bump's contention that its proposed activities are lawful. The defendants base their position on language often quoted in Connecticut case law that a grant of a right of way in general terms is to be construed to permit "any use which is reasonably connected with the reasonable use of the land to which it is appurtenant"Birdsey v. Kosienski, 140 Conn. 403, 413 (1953); see also Mackin v.Mackin supra 186 Conn. 189; Lichteig v. Churinetz, 9 Conn. App. 406, 410
CT Page 11217 (1986). At first blush such pronouncements appear to support the defendants' position. Such language could be interpreted, as apparently urged by the defendants, to theoretically allow a right of way beneficiary to place a swimming pool in the right of way, if such were connected to the reasonable use of the benefitted property. This court, however, cannot accept such a broad construction of what is admittedly somewhat loose language. It must not be forgotten that it is the grant of a right of way "to and from West Street" we are construing, not a fee simple. In other words, the `any use' permitted is confined to use as a right of way. See Center Drive-In Theatre. Inc. v. Derby, 166 Conn. 460,465 (1974). In Hall v. Altomari, 19 Conn. App. 387 (1989) the Appellate Court, interpreting a right of way grant containing the words "to and from", considered the phrase "as words of limitation restricting . . . rights . . . to those of ingress and egress". Id 391.
Connecticut case law has regularly recognized that owners or beneficiaries of an easement must exercise their rights in such fashion as to not unreasonably burden or impair the rights of the owner of the servient estate. Center Drive-In Theatre, Inc. v. Derby, supra; Kuras v.Kope, 205 Conn. 332, 341 (1987); Ezikovich v. Linden, supra. An easement holder has all the rights incident to or necessary to its enjoyment, but nothing more. Peterson v. Oxford, 189 Conn. 740, 745 (1983).
A. Proposed New Driveway
The court now turns to the issues raised by the temporary injunction application. Bump proposes to build a new asphalt driveway from West Road to its property. It will be relocated somewhat to the south of the existing driveway but well within the fifty foot wide right of way. The original Mullikan — Haeberly deed envisioned the "construction" of a roadway. The construction of a new driveway is a reasonable improvement in the right of way consistent with the changes taking place on the Bump property resulting from the new residence construction. As such, there is not a likelihood that Davila will prevail on this issue at a full trial and the application for a temporary injunction to stop the driveway construction is denied. Similarly, the Belgian block apron proposed at the driveway entrance off West Road is a reasonable, if not necessary, improvement which poses a minimal or no hardship to Davila. That portion of the application is also denied.
B. Belgian Block Curb
The proposed Belgian block curb along the new driveway presents a different problem. Davila contends that this will hamper her use of the property in that the tradesmen, repair and maintenance workers and lawn CT Page 11218 mowers who have, in the past, entered her property from the right of way to obtain access to the pool and lawn areas will be forced to traverse the four inch high curb. (T. 46). The court finds that while the curb may not actually prohibit Davila from using the area for the workers' vehicles, it is not designed to be traversed. The curb may be an aesthetic addition to the driveway; however, it impinges unnecessarily on the Davila's rights. The application is therefore granted to the following extent: the curb may not be constructed on the north side of the new driveway unless an adequate opening is left to allow trucks to exit the driveway to the grassy area on that side.
C. Walls, Gate and Landscaping
The next issues involve Bump's proposed construction of two concave or arced stone walls, one on either side of the new driveway at the West Road entrance and the possible installation of a gate between the two walls, as well as the proposed removal of trees and shrubbery on the south side of the right of way and planting of a number of ten to twelve foot spruce trees and accompanying shrubbery, sod and irrigation system in that area. The apparent purpose of this planting would be to screen the view south of the right of way. These proposed landscaping changes are presumably designed to, and probably would, enhance the visual approach to and exit from the residence on the Bump property over the right of way. Although it is a close question, the court concludes that under Connecticut law these improvements are not a reasonably necessary use of the right of way. While there was little evidence presented of the intent of the parties to the Mulliken — Haeberly deeds, the words of the deed express an intent to provide access to the (now) Bump property from West Road. These proposed improvements do not add one iota of accessibility to the Bump property or any utility to the right of way. Without these attributes the proposed projects are nothing more than an exercise of dominion over the right of way not reasonably related to its purpose. The walls and the possibility of the gate could impair Davila's appropriate use of the property. Furthermore, the cutting and removal of the trees and shrubs would alter the existing condition of the property. Therefore, the court finds that there is a likelihood that Davila will succeed on the claims involving the wall, gate and landscaping. See Rothman v. Rothman, Judicial District of Stamford/Norwalk at Stamford, CV 98-016 3509 (June 8, 1998, D'Andrea,J.); Sgrignari v. Vallone, Judicial District of New Haven at New Haven, CV 97 040 4191 (May 25, 1999, Downey, J). The court also finds that there is irreparable harm arising from the loss of existing trees and that the balance of hardship tips in Davila's favor since the walls and gate could be constructed on the Bump property at the east end of the right of way. CT Page 11219
 III — CONCLUSION
The court notes that there are several issues in this case which it is not now being called on to adjudicate in this application. Foremost, is the right of Bump to grant a utility easement to CLP over the right of way and the subsequent installation of an underground conduit in the right of way area for power lines. At the April 22, 2002 hearing, counsel for Davila specifically noted that she was not seeking to undo any work already accomplished on the right of way — an appropriate position in light of the temporary injunction's role of maintaining the status quo.
To summarize, the court grants a temporary injunction prohibiting, until further order, the installation of Belgian block curb on the north side of the proposed driveway unless an adequate exit opening is available, prohibiting the removal of any additional trees or live growth, unless such are directly in the path of the new driveway, and prohibiting the planting of new trees or shrubs and the construction of an irrigation system, walls and gate on the right of way.
ADAMS, J.