SMITH v. CITY OF ANN ARBOR.

1. NUISANCE—CITY DUMP—HEALTH.

City dump from which salvageable metals, rags and paper were removed, a certain amount of combustible material burned, and dirt and ashes used to fill in ravines, located about 600 feet from nearest road and nearly surrounded by trees, which is not shown to have any serious effect on anyone's health because of odors or presence of garbage, dead animals, rats or flies did not constitute a nuisance *per se.*

2. SAME—CITY DUMP—PROPERTY VALUES—PIGGERY AT GARBAGE DUMP.

Establishment of city dump in charge of a caretaker who did not permit dumping of garbage, dead animals or similar material in a farming community near city of about 30,000 did not materially depreciate property values in vicinity where

within a half mile distance from 20-acre tract used as garbage dump at which a piggery had been operated for several years and continued to operate until time of trial.

3. SAME—PIGGERY A NUISANCE PER SE.

Operation of a piggery in a pleasant surburban home and farming area would be considered a nuisance *per se.*

4. SAME—ESTHETICS—CITY DUMP.

Mere esthetics is beyond the power of the court to regulate in suit by adjacent owners of property to enjoin continuance of city dump because of claim that dump is attractive to school children at nearby school, that its effect is harmful, decreases self-confidence in them, causes an increased tendency to lie and disobey, and is bad for their morale.

5. SAME—CITY DUMP—TRAFFIC—RUBBISH ALONG NEARBY HIGHWAYS.

The fact that incident to use of tract of land for city dump in suburban home and farm area there is an increased use of the highways and increased traffic hazards in the vicinity and that rubbish is occasionally left along the highway by individuals who may use the dump did not constitute sufficient ground for condemning the dump as a nuisance.

6. HIGHWAYS AND STREETS—DEPOSIT OF RUBBISH ON HIGHWAY NEAR CITY DUMP.

Any person, not authorized by township highway commissioner, who puts any rubbish or waste material in the highway in front of a city dump to the annoyance of any citizen of the State is guilty of a misdemeanor (1 Comp. Laws 1929, § 4085).

7. MUNICIPAL CORPORATIONS—CITY DUMP—ENFORCEMENT OF PENAL STATUTES.

A city does not have the burden of enforcing a penal statute that may be violated incident to the use of city dump located without the city limits in an adjoining township (1 Comp. Laws 1929, § 4085).

8. APPEAL AND ERROR—EQUITY—NUISANCE.

In reviewing suit to enjoin operation of city dump in adjoining township which nearly surrounded the city and which later enacted ordinance prohibiting establishment of any further dumps, Supreme court decides the equities of the matter *de novo* and, while reluctant to overrule conclusions reached by circuit judge who sees and hears witnesses, it does look at the whole situation and grants or withholds relief as good conscience dictates.

9. NUISANCE—ABATEMENT OF OBJECTIONABLE FEATURES.

If a nuisance is private and arises out of a particular manner of operating a legitimate business, the court will order elimination, if possible, of the objectionable features which infringe upon the ordinary rights of others instead of compelling an abatement of the entire business.

10. SAME—CITY DUMP—CONTINUANCE OF OPERATION—MODIFICATION AS TO ODORS.

Trial court's permanent injunction against any use of city dump, located without limits of city with population of over 30,000 people, in suburban home and farm area in an adjoining township within a half mile of a piggery is set aside and continuance of operation in present manner permitted, providing that combustible material is burned in sufficiently small quantities and at such times as to minimize annoyance from smoke therefrom, that burning take place when nearby school is not in session, that no objectionable odors from burning material such as rags, cloth and bones be permitted, and requiring city to convey to dump such rubbish as may have been scattered along highways.

11. APPEAL AND ERROR—REMAND—JURISDICTION OF CIRCUIT COURT—OPERATION OF CITY DUMP.

On remand of suit to abate operation of city dump, circuit court is invested with jurisdiction to enforce decree as to modified operation thereof in the event of changed conditions or noncompliance with decree.

12. COSTS—PUBLIC QUESTION—OPERATION OF CITY DUMP.

No costs are awarded in suit to abate operation of city dump, a public question being involved.

Appeal from Washtenaw; George (Fred W.), J., presiding. Submitted October 14, 1942. (Docket No. 30, Calendar No. 42,113.) Decided November 25, 1942.

Bill by James C. Smith and others against City of Ann Arbor to enjoin the use of certain property as a city dump and for other relief. Decree for plaintiffs. Defendant appeals. Reversed.

*Edward F. Conlin* and *Richard P. Whitker,* for plaintiffs.

*William M. Laird,* for defendant.

BOYLES, J.  Plaintiffs, owning property or residing in Ann Arbor township adjacent to the city of Ann Arbor, filed this bill in chancery to permanently enjoin the city of Ann Arbor from using certain property in the township as a city dump.  The circuit judge granted the relief prayed for.  From the record, we find the facts as follows:

The city of Ann Arbor has a population of approximately 30,000 augmented by about 12,000 students attending the university of Michigan.  The city has about 7,000 dwellings.  It has no incinerator and accordingly is compelled to use a dump for the disposal of wastepaper, leaves, street rubbish, ashes, tin cans and such other noncombustible and non-garbage matter as usually accumulates in cities of that size.  The city formerly operated a dump within the city limits and an incinerator for burning combustible waste material.  This dump was objectionable as well as being nearly filled in and there was no other place within the corporate limits where waste material could be disposed of except some small fill-ins for ashes and dirt.  The board of public works of the city employed real-estate men to search for a satisfactory site and covered the localities around Ann Arbor for a distance of several miles.  A large number of sites were investigated and approximately three years spent in finding a suitable location for a dump.  As a result of this survey, in February, 1941, the city leased a small parcel of land in the vicinity of a mile north of the city, in Ann Arbor township, for a period of 10 years, with right of renewal.  The topography of this site is irregular, broken up with glacial potholes which are quite deep and furnish considerable capacity for filling.  The city began using as a dump a ravine on

this property, which is surrounded by trees and approximately 600 feet from Dhu Varren road, the nearest highway. The city cut a roadway through the trees to gain access to the ravine. Pontiac road, another highway, runs west of the dump at a distance of approximately one-fourth of a mile. Most of the plaintiffs herein either reside or have property on Pontiac road. The dump is not appreciably visible from either highway when leaves are on the trees. The city planted other trees to further conceal the site. Adjacent property has not been developed for suburban residential purposes but consists of farms, and about 8 or 10 residences within a radius of about half a mile. Three of these dwellings are on the north side of Dhu Varren road and others are on Pontiac road within about a half mile from the dump. The nearest dwelling to the entrance of the dump is on Dhu Varren road and is located about four-tenths of a mile east of the entrance. North and east of the site a schoolhouse with about 17 students is located at a distance of nearly one-half mile.

The city began using the ravine as a dump in February, 1941. When first used, complaint was made that sun shining on tin cans in the dump reflected toward the school building, whereupon use of that part of the dump was abandoned and the annoyance ceased. On May 17, 1941, plaintiffs filed their bill of complaint to enjoin the city from using the property as a dump, which bill as amended in September is now the complaint for the present suit. On May 24, 1941, after the city began using the dump, the township of Ann Arbor adopted an ordinance prohibiting the establishing of any further dumps in the township. The township completely surrounds the city except for about one-fourth mile on its southerly boundary.

The dump was used by city drays and by citizens of the city as a place where ashes, dirt, street sweepings, tin cans, wastepaper, leaves, brush, broken glass and other similar rubbish might be deposited. The city maintained a caretaker and no dumping of garbage, dead animals and similar material was permitted. About 50 per cent. consisted of dirt, ashes and street sweepings, and about 60 per cent. of the loads were hauled by private cars. It was estimated that there were about 100 loads a day delivered at the dump. A caretaker was in constant attendance during working hours, except on Sundays and holidays. In May, 1941, the city entered into a contract with an individual to salvage all of the metal, rubber, paper and other objects which had any value. The paper was baled and taken away each week, along with a lot of metal, rubber, rags and other articles of salvage value. The combustible material such as leaves, brush, broken barrels, unusable wastepaper and similar material was burned in the dump. This was mostly done by fires started at the weekend after school hours and the fire usually burned overnight. Dirt, street sweepings and ashes were used to cover the noncombustible material to the ground level.

Plaintiffs' most serious complaint is based upon a claim of offensive smoke nuisance from the burning of combustible material. Plaintiffs claim that odor and smoke from the dump interfere with the enjoyment of homes and use of the schoolhouse. Complaint is also made that use of the dump causes the public to scatter rubbish along the highway at times and to deposit rubbish at the gate entrance from the highway to the dump on Sundays and holidays when the dump is closed. Complaint is also made of the increased traffic use of the highway and that establishing the dump has depreciated the value of prop-

erty in the vicinity; also that the dump has an injurious effect upon the temper and morale of the school children, decreases their self-confidence, and causes them to lose caste. Plaintiffs also claim that the dump was established in a pleasant suburban home and farming area.

There is no testimony of probative value that establishing and maintaining the dump has had a deleterious effect on health. There is no satisfactory proof that the sight of the dump or any odors from smoke, or other use of the dump, results in any serious effect on anyone's health. There is no proof of decaying garbage or other odorous matter, or the presence of dead animals, rats or flies, which might constitute a menace to public health. Plaintiffs expressly disavow any claim that the dump constitutes a nuisance *per se*.

We are not impressed with any merit in the claim that establishing the dump in the place where it is located, and conducting it in the manner shown by the testimony, has resulted in any material depreciation of property values of those who reside on or own property in adjacent territory. For several years the maintenance of a garbage dump has been permitted in operation on a farm at the intersection of Pontiac and Dhu Varren roads. This garbage dump, used as a piggery, was actually nearer to both highways than the present city dump. One of the plaintiffs testified that for four years this place was used for garbage, that five big tank trucks loaded with garbage went by his house every day and that the garbage was scattered over a 20-acre field. The field was used as a piggery where a large number of hogs fed upon open garbage scattered on the surface of the land. This witness testified the stench at times was terrible. This condition was permitted to continue; garbage was being hauled and deposited there as late as during the trial and as recently as two

weeks before this witness testified. Under these circumstances, little merit can be given to plaintiffs' claim that the dump now in question was established in "a pleasant suburban home and farming area." Operation of the piggery would be considered a nuisance *per se*. *Trowbridge* v. *City of Lansing*, 237 Mich. 402; *Albaugh* v. *Abbott*, 253 Mich. 588. A comparison between the city's method of operating the dump and the use of lands nearer the highway for piggery purposes is entirely favorable to the city.

Plaintiffs claim that the dump is attractive to school children, that its effect is harmful, decreases the self-confidence of the pupils, causes an increased tendency to lie and disobey, and is bad for their morale. As said by Mr. Justice WIEST in *Perry Mount Cemetery Ass'n* v. *Netzel*, 274 Mich. 97, a plant may be unsightly and detract somewhat from the beauty of view, but mere esthetics is beyond the power of the court to regulate.

Nor do we consider that the use of the dump should be enjoined because it occasions an increased use of the highways or because of increased traffic hazard conditions. To hold otherwise would lead to an absurdity. For example, a great plant for the assembling of bomber planes has recently been established at Willow Run, only a few miles from the site of the dump here complained of, resulting in a tremendous increase in highway use and traffic hazards in that vicinity. The Willow Run plant cannot be considered a nuisance. Nor do we consider that the occasional leaving of rubbish (not garbage) along the highway by individuals who may use the dump constitutes sufficient ground for condemning the dump as a nuisance. While the record before us does not so show, we assume that the gate placed by the city at the entrance of the road to the dump is at the line between the highway and private property.

If not, it should be changed. Any person, unless authorized by the highway commissioner of the township, who puts any rubbish or waste material into the highway in front of the closed gate to the annoyance of any of the citizens of this State is guilty of a misdemeanor. 1 Comp. Laws 1929, § 4085 (Stat. Ann. § 9.339). In fact, the record shows a number of arrests have been made of offenders who put rubbish in the highway on Pontiac road. There is no particular burden placed upon the city to enforce this penal statute. If city employees or other individuals violate the statute, they are subject to the penalty. In an effort to prevent any bad result from the use of the highway by the depositing of rubbish along the highway, the city by ordinance has required that the rubbish be hauled only in covered vehicles.

The most serious complaint made by plaintiffs is that the burning of combustible material at the dump causes annoyance and hardship at the residences of several of the plaintiffs and at the school when in session. This occurs only when the prevailing wind is such that smoke and odors are carried toward some dwellings or toward the schoolhouse. There is testimony that on several occasions this has kept the school children and certain residents of the vicinity within doors and caused windows to be kept closed. While smoke and odor from burning leaves and brush cannot generally be considered to be ground for abating a nuisance, excessive smoke, especially if accompanied with any odor of burning rags or offensive material, might afford ground for abatement. We do not have the benefit of any finding of fact by the circuit judge as to what was considered by him to constitute the nuisance. The court, in a very short opinion, merely said:

"That the establishment of a refuse dump on that property has resulted in a nuisance which, in

the opinion of the court, should cease to exist, and a decree may be prepared providing for a permanent injunction, enjoining the defendants from continuing the said refuse dump."

The attitude of counsel for the city on this question is significant and may be gleaned from counsel's statement of the questions involved:

"May the court permanently enjoin the use of the dump for all purposes, because of alleged objectionable smoke and odors, without giving the city an opportunity to rectify such conditions? * * *

"In balancing the equities between the parties is the lower court justified in permanently closing the dump because of slight inconvenience to several of the plaintiffs, as compared to the serious injury to the defendant, its residents, and taxpayers?"

We cannot ignore the situation the city finds itself in. It must be conceded that a city of 30,000 or 40,000 residents must find some way to dispose of rubbish such as ashes, street sweepings, dirt, leaves, brush, tin cans, broken glass and much other waste material not classified as garbage. The city of Ann Arbor has no place within its corporate limits where its duty to its citizens in that regard can be accomplished. The city is almost completely surrounded by a township where an ordinance has been enacted which, if entirely enforceable, would effectively prevent the city from using any other place in the township for rubbish disposal. The city has thrown many safeguards around the use of the present site as a dump, with a minimum of discomfort and annoyance to others. This court has the responsibility of reviewing the record before us and deciding the equities of the matter *de novo.* We have said many times that we are usually reluctant to overrule the conclusions reached by the circuit judge who sees and hears the witnesses. However, "equity looks at the whole situation and grants or

withholds relief as good conscience dictates." *Thill* v. *Danna*, 240 Mich. 595. If a nuisance is private and arises out of a particular manner of operating a legitimate business, we will do no more than point to the nuisance and decree the adoption of methods calculated to eliminate the injurious features. *MacKenzie* v. *Frank M. Pauli Co.*, 207 Mich. 456 (6 A. L. R. 1305). Where it is possible to eliminate the objectionable features which infringe upon the ordinary rights of others, equity may so decree instead of compelling an abatement of the entire business. *Waier* v. *Peerless Oil Co.*, 265 Mich. 398.

A decree may be entered setting aside the permanent injunction and permitting the use of the dump so long as the city continues its present manner of maintaining and operating the dump, but providing that combustible material, such as leaves, brush, wood and wastepaper, shall be burned in the dump only in sufficiently small quantities and at such times as to minimize the annoyance from smoke therefrom; that no objectionable odors from burning material such as rags, cloth and bones be permitted; that such combustible material be burned only when school is not in session; and that the city shall gather and convey to the dump such rubbish as may have been scattered along the highways.

As to other conditions, the decree may provide that the maintenance and operation of the dump may be permitted only in the manner existing at this time as set forth in this opinion. Specific mention and direction should be provided in the decree for those conditions.

The decree entered herein may provide that the cause shall be remanded to the circuit court for such further proceedings as may appear necessary for enforcement thereof in the event of changed

conditions or noncompliance therewith.  See *Waier
v. Peerless Oil Co., supra.*  No costs awarded, a public question being involved.

CHANDLER, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.