FREDERICK W. WOOD ET AL. v. TOWN OF WILTON

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued February 7—decided April 2, 1968

*Harry H. Hefferan, Jr.,* with whom were *Abner W. Sibal* and *Robert A. Singewald,* for the appellant (defendant).

*Frederick L. Comley,* for the appellees (plaintiffs).

THIM, J. The plaintiffs, who own real property in the vicinity of a sixty-five-acre tract of land owned by the defendant, the town of Wilton, brought this action seeking to have the town enjoined from using a portion of the tract as a sanitary landfill refuse disposal area. The plaintiffs claim that the proposed use will be a nuisance. The trial court rendered judgment permanently enjoining the town from putting its property to the proposed use. The town has appealed.

Two of the town's assignments of error relate to the court's finding of facts. These assignments are

not pursued in the town's brief and are therefore treated as abandoned. *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 77, 239 A.2d 500; *Bartlett* v. *Flaherty,* 155 Conn. 203, 204, 230 A.2d 436.

The finding reveals these facts: The town of Wilton is a residential community with a population of approximatly 11,000. Prior to 1966, there was no public refuse disposal site in the town. Most of the town's refuse was collected by private collectors and hauled to a privately owned dump site in the adjoining town of Weston.

In 1963, apparently realizing that it might eventually have to provide a local refuse disposal site, the town, through its board of selectmen, appointed a citizens committee to locate and report on possible refuse disposal sites within the town. The committee included among its members the town health officer and two engineers. It considered four tracts of land. One tract became unavailable because the town decided to use it for school purposes. Two of the tracts were eventually rejected because they were in densely populated areas of the town. The final tract, hereinafter referred to as the Katzman tract, was in the northeast corner of the town. This portion of the town is rural in character. The area is zoned for low-density residential use. The Katzman tract is undeveloped and is densely wooded. It is traversed by the power transmission lines of a local utility company. A railroad right of way, which is operational, is adjacent to the tract. The committee recommended the Katzman tract to the town planning and zoning commission as a possible refuse disposal site. The commission considered the Katzman tract and reported favorably on the proposed acquisition and possible use of the tract provided the town purchase some adjoining property to

increase the size of the tract to sixty-five acres and provided that the premises be adequately screened with a 200-foot natural screen.

Before proceeding further, the town retained a firm of consulting engineers for the purpose of having it study the feasibility of using the Katzman tract as a refuse disposal area. The firm reported to the town that the Katzman tract was suitable for a sanitary landfill operation.

Following the receipt of the engineers' report in February, 1965, the board of selectmen submitted to the electors at a town meeting a proposal to purchase the Katzman tract. Representatives of the engineering firm who made the study were present at the meeting for the purpose of answering questions concerning the proposal. At this meeting the first selectman of the town stated that he was hopeful of finding some solution to the town's refuse problem without using the Katzman tract as a disposal area. When the discussions were finished, the electors voted to approve the purchase of the entire sixty-five acres for town purposes for $67,000.

The town had been notified by the owner of the private dump site in Weston that it would have to cease using that site by July 1, 1966. This deadline was eventually extended to October 1, 1966. The town's board of selectmen, confronted with this deadline, attempted to find a solution to the town's refuse disposal problem which would not involve the use of the Katzman tract. The selectmen attempted to lease the private dump site in Weston for a price, but its owner refused their offer. The selectmen also investigated possible sites in other towns. A dump site in New Milford was found to be available. New Milford, however, is over thirty miles from Wilton. The selectmen attempted to interest other

towns in the area in a regional arrangement for refuse disposal. Several towns were contacted, but they rejected the proposed regional plan for refuse disposal and also refused to take Wilton's refuse.

Finally, on August 15, 1966, the Wilton board of selectmen voted to use the Katzman tract as a refuse disposal site if no other alternative was available. After the owner of the private dump site in Weston refused to extend the October 1, 1966, deadline, the town commenced to prepare the Katzman tract for refuse disposal.

Pursuant to the recommendations contained in the report from the firm of consulting engineers, the town proposed to operate a sanitary landfill method of disposing of garbage and refuse. Its plan, subject to certain operational specifications, was approved by the state department of health. The planning and zoning commission issued a special permit, which allowed the proposed use.

The actual disposal site was to occupy only a portion of about one and one-half to four acres of the sixty-five-acre tract. The site is a saucer-shaped swampy area surrounded by higher ground. It was to be surrounded by a 200-foot buffer strip, which would effectively screen the disposal area from public view. The area was to be open Monday through Friday from 7:30 a.m. to 4:30 p.m. and a half a day on Saturday. Refuse would be dumped into the disposal area. A bulldozer would operate during these hours, spreading, compacting and covering all refuse. By the end of each day, all refuse would be covered by clean fill, which would eliminate any rodent problem.

Although the operational specifications of the state department of health did not require it, the board of selectmen voted to prohibit all burning at

the site. They also voted to prohibit the dumping of automobiles, tires, construction materials, stumps, brush and rocks.

Approximately two months after the preparation of the tract had begun, but before the area became operational, the town was permanently enjoined from proceeding further with its plan.

The trial court found that carelessness and human error on the part of citizens, collectors, trespassers and children would be likely to cause fires in an area such as this and that fires could occur at sanitary landfill operations owing to spontaneous combustion. It also found that at the present time there was very little traffic in the area of the town in which the Katzman tract was located, but, because those using the refuse area would come by vehicle, traffic would increase. Finally, the court found as a fact that "[t]here is a psychological factor in being near a 'dump.' "

On the basis of the aforementioned facts, the trial court concluded that, although in planning the sanitary landfill operation, the town had employed established and accepted practices to reduce to a minimum dangers and inconveniences, nevertheless the proposed use would be a nuisance. It concluded that the wrong location had been chosen and that the proposed operation would create a fire hazard and would increase the traffic hazard. It also concluded that a "town dump" blights an area with a "black psychological overcast" and that the operation would have a depressing and depreciating effect on the plaintiffs' properties.

The principal claim of the town is that the subordinate facts as found by the trial court are insufficient to support its conclusion that the proposed use will be a nuisance. We agree.

A refuse disposal operation is not a nuisance per se. See note, 52 A.L.R.2d 1134, 1136; 66 C.J.S. 802, Nuisances, § 49. It may, however, be a nuisance in fact as a result of the manner in which it is operated. *Marchitto* v. *West Haven,* 150 Conn. 432, 437, 190 A.2d 597. " 'The essential element of nuisance is a continuing inherent or natural tendency to create danger and inflict injury,' and where . . . the use of land is involved, 'it must appear not only that the condition by its very nature is likely to cause injury but also that the use is unreasonable or unlawful.' " Ibid. (quoting from *Chazen* v. *New Britain,* 148 Conn. 349, 355, 170 A.2d 891).

A refuse disposal operation is generally held to be a governmental function. 38 Am. Jur. 311, Municipal Corporations, § 614; 63 C.J.S. 85, Municipal Corporations, § 777 (b). The town has the power, under the general law, to provide for and to regulate the disposal of refuse and garbage. General Statutes § 7-194 (8) and (14). "Courts will act with extreme caution where the granting of injunctive relief will result in embarrassment to the operations of government." *Coombs* v. *Larson,* 112 Conn. 236, 247, 152 A. 297. Of course, if the evidence clearly demonstrates that a particular method of refuse disposal will, at a given location, be a nuisance and that irreparable harm will result therefrom, the proposed operation may be enjoined. *Brainard* v. *West Hartford,* 140 Conn. 631, 637, 103 A.2d 135.

The trial court concluded that the town had chosen the wrong location for the refuse disposal site.

We cannot ignore the situation in which the town found itself. The town had to find some place where the refuse of its residents could be disposed of. It made numerous unsuccessful efforts to secure a refuse disposal site beyond its boundaries. It

selected the Katzman tract only after careful study. The tract is in a rural section of a largely residential community. It decided to use the tract for waste disposal only after three other local sites had been explored and rejected. Less than one-sixteenth of the tract will actually be used for waste disposal purposes. It is understandable that these plaintiffs want the refuse disposal operation located elsewhere, but courts cannot interfere with the town's exercise of a legislatively granted power to select a refuse disposal site unless that selection is made arbitrarily, illegally or so unreasonably as to amount to an abuse of its discretion. *De Palma* v. *Town Plan Commission,* 123 Conn. 257, 266, 193 A. 868. On the basis of the subordinate facts as found by the trial court, we cannot say that the town's selection of the Katzman tract was made in an arbitrary, illegal or patently unreasonable manner.

The trial court concluded that the sanitary landfill operation would create a fire hazard in this area. This conclusion is not supported by the subordinate facts. No burning will be allowed at the disposal site. All refuse will immediately be covered with clean fill. The court did find that fires could occur at sanitary landfill operations owing to spontaneous combustion. The court also found, however, that at this operation the entire disposal area had been completely stripped of vegetation. Clearing the area in this way would minimize or negate the possibility of fire emanating and spreading from the disposal operation itself. The trial court found that carelessness on the part of private citizens, private collectors, trespassers and children could cause fires in an area such as this. This finding does not support its conclusion that the sanitary landfill operation itself will create a fire hazard.

The trial court concluded that the refuse operation would increase traffic in the area. The court found that at the present time there is very little traffic in the area of the Katzman tract. The proposed use of the tract cannot be enjoined because it will increase the traffic flow in the area. *Smith* v. *Ann Arbor*, 303 Mich. 476, 483, 6 N.W.2d 752.

The trial court concluded that the specter of a "town dump" blights the area with a "black psychological overcast" which has a depressing and depreciating effect on the plaintiffs' properties. The finding discloses that this fear of a "town dump," although real, has no basis in fact. "The anticipation by the plaintiffs of the possible consequences of the defendant's proposed use of the property can be characterized as a speculative and intangible fear." *Nicholson* v. *Connecticut Half-Way House, Inc.*, 153 Conn. 507, 511, 218 A.2d 383. "We think it can be stated as true that the disposal area of garbage involved in this suit is not a garbage dump as such expression is usually used. On the contrary, it is a sanitary landfill garbage disposal operation." *Birmingham* v. *Scogin*, 269 Ala. 679, 688, 115 So. 2d 505.

The trial court erred in concluding that the selection and the proposed use of the town's property was a nuisance. If, after operations have commenced, a nuisance should arise out of the use of the site, the remedy of injunction would still be available should the circumstances warrant that form of relief.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.