[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORADUM OF DECISION ON PRATT WHITNEY'S MOTION TO STRIKE
Defendant United Technologies Corporation, Pratt Whitney Division ("Pratt Whitney") has moved to strike the First, Third, Fourth, Fifth, Sixth, Seventh and Eighth Counts of the plaintiffs' Revised Complaint dated August 31, 2001. This case involves municipal waste disposal activities that took place several decades ago. The plaintiffs, Richard and Norma Vaillancourt, live on Rejean Road in the Town of Southington. Mr. Vaillancourt purchased the home in 1988. The home is located near the site of a former municipal landfill, a facility which operated for more than forty years until it was closed in 1967.
Summary of Allegations
CT Page 5867
The plaintiffs have sued the Town of Southington ("Southington" or "the Town"), on claims concerning Southington's operation of the landfill up to 1967. The plaintiffs also have sued Southington based on claims that, after closing and covering the landfill in 1967, the Town permitted residential and commercial development to occur in areas on and around the former landfill. During its decades of operation, the landfill was the municipally designated facility for disposal of all wastes in Southington. The Town accepted and disposed of a variety of residential, commercial and industrial wastes at the landfill. Pratt Whitney, along with many other parties, used this landfill for disposal of its wastes, including industrial wastes. The plaintiffs have sued Pratt Whitney based on claims that Pratt Whitney used the landfill. The plaintiffs have not sued any of the other former users of the Southington landfill.
The Revised Complaint asserts common law theories of negligence (First, Second and Eighth Counts), nuisance (Fourth Count), trespass (Fifth Count), and strict liability (Sixth Count) to advance plaintiffs' claims for damages based on alleged contamination and/or toxic exposure. The plaintiffs also claim damages for fraud (Seventh Count), alleging that they relied upon false assurances by the Town (and possibly Pratt 
Whitney) as to the environmental condition of the former landfill
Discussion of the Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. Dennison v. Klotz,12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986).
First Count — Negligent Disposal of Toxic and Hazardous Wastes
For purposes of this decision, the following are the relevant allegations by the plaintiffs under their First Count. Plaintiffs allege CT Page 5868 that Southington "owned and operated" the Old Southington Landfill for about 47 years, from approximately 1920 until the landfill was closed by Southington in 1967. First Count ¶¶ 6, 12. During that period, the Town accepted liquid, solid, and other wastes at the municipal landfill, from a variety of residential, commercial, and industrial sources. Id. ¶ 8. Among the users of the landfill was Pratt Whitney. Id. ¶ 10. Some of the wastes disposed of in the landfill up to 1967, including wastes from Pratt Whitney, allegedly were "hazardous" and/or "toxic."[1] Id. ¶¶ 9-10.
Plaintiffs further allege that, after Southington closed the landfill, Southington permitted and allowed residential, commercial and industrial development to occur in the formerly undeveloped areas on and around the landfill site, including the construction of residences on Rejean Road, located to the north of the site, where the plaintiffs now live. First Count ¶ 13-14. Southington allowed this development to occur without requiring the properties to be tested. Id. ¶ 15. In 1988, plaintiff Richard Vaillancourt purchased a house at 94 Rejean Road, "across [the road] from" the former landfill site. Id. ¶¶ 3, 7. Ten years later, in 1998, plaintiff Norma Vaillancourt moved to the 94 Rejean Road residence. Id. ¶ 3. Richard Vaillancourt also owned and operated a welding business which was situated on the former landfill site for over fifteen years. Id ¶ 53-54 (pp. 15-16).
Plaintiffs allege that the defendants were negligent in disposing of "toxic and hazardous substances," in failing to maintain the landfill, in allowing substances to spread, in failing to warn the plaintiffs, and in permitting or encouraging the plaintiffs to live and work on and around the former landfill site. Id. ¶ 59 (pp. 17-18). Plaintiffs claim that their property has been contaminated by unidentified "chemical runoff from the hazardous and toxic wastes" at the landfill. Id. ¶ 48 (pp. 14-15). They also claim that they have been personally exposed to unidentified "hazardous chemicals." Id. ¶ 56 (p. 18).
The existence of a duty of care, which is a question of law for the court, is essential to any claim of negligence. Lodge v. Arett SalesCorp., 246 Conn. 563, 571, 717 A.2d 215 (1998). The nature of the duty, and the identity of the persons to whom a duty is owed, are determined by the specific circumstances surrounding the conduct of the individual.Jaworski v. Kierman, 241 Conn. 399, 405, 696 A.2d 332 (1997). Only if a duty is found by the court to exist may the trier of fact consider the question of whether that duty was violated. Petriello v. Kalman,215 Conn. 377, 382-83, 576 A.2d 474 (1990). To determine the existence of a duty, the court considers: (1) whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that the harm of the general nature of that CT Page 5869 suffered by the plaintiff was likely to result; and (2) whether, on the basis of public policy, the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. Zamstein v. Marvasti, 240 Conn. 549, 558,692 A.2d 781 (1997).
The first step in the court's duty analysis is to determine the foreseeability of the plaintiff's injury. Jaworski, 241 Conn. at 406. In hindsight, virtually all harms are technically "foreseeable." RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381, 386, 650 A.2d 153
(1994). What is relevant in determining foreseeability is the "attenuation between [the defendant's] conduct, on the one hand, and the consequence to and the identity of the plaintiff on the other hand." RKConstructors, 231 Conn. at 387-88.
 While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.
Waters v. Autuori, 236 Conn. 820, 827-28, 676 A.2d 357 (1996). Thus, a person is required only to take precautions against those dangers that are "reasonably foreseeable." Lodge, 246 Conn. at 577 (emphasis in original). The question of duty is always determined based on the then-existing circumstances. Roy v. Friedman Equip. Co., 147 Conn. 121,124, 157 A.2d 599 (1960).
In Lodge, a fire alarm was falsely reported due to negligence on the part of the defendants. When fire engines responded to the alarm, a fire truck's brakes failed en route, resulting in an accident. The fire engine's brakes had not been properly maintained. Lodge,246 Conn. at 567-69. The plaintiffs sued the defendants in negligence. The Supreme Court declined to recognize a duty of care between the defendants and the plaintiffs, because the circumstances of the injuries were too far removed from the defendant's conduct. Id. at 577. The court observed that the negligent transmission of a fire alarm did entail some foreseeable risk;id. at 573-74; and that the risk of brake failure by a fire engine was literally or technically "foreseeable" Id. at 576. However, as a matter of law, the court held that that particular risk was not "reasonably foreseeable," and that the brake failure therefore was considered an "unforeseeable consequence." Id. at 577. Lodge further considered the question of duty from a policy perspective, concluding that imposing a duty on the defendants running to the remote plaintiffs would not serve a CT Page 5870 proper purpose. Id. at 577-86.
Here, the link between Pratt Whitney and the plaintiffs is too attenuated for the plaintiffs' alleged injuries to have been a reasonably foreseeable consequence of Pratt Whitney's activity when Pratt 
Whitney used the landfill. Pratt Whitney's waste disposal activity took place decades before Richard Vaillancourt purchased his house on Rejean Road. Southington owned and operated the landfill for the purpose of receiving and disposing of wastes from businesses such as Pratt 
Whitney. Southington had responsibility to oversee the closure of its landfill in 1967, and plaintiffs do not allege any role by Pratt 
Whitney in that process. See First Count ¶ 12. Similarly, plaintiffs allege that it was Southington that decided to open the former landfill site and its nearby areas to development. Id. ¶ 13-14. Plaintiffs do not allege that Pratt Whitney had anything to do with those actions by the Town.
The Complaint sets forth no facts to support a conclusion that, when Pratt Whitney used the landfill, it had any reason to anticipate the Town would not operate or maintain this public facility in a safe and proper manner. See Cahill v. Board of Educ., 198 Conn. 229, 242,502 A.2d 410 (1985) (public officers are presumed to have performed their duties properly). Nor did Pratt Whitney have any reason to anticipate any negligence on the part of the Town in closing the landfill in 1967. There is no factual allegation supporting a conclusion that Pratt 
Whitney had either the opportunity or the legal authority to control the actions and decisions of Southington. A refuse disposal operation is a governmental function. Wood v. Wilton, 156 Conn. 304, 310, 240 A.2d 904
(1968). Similarly, zoning and development are matters controlled by municipalities. At the time Pratt Whitney used the landfill, Pratt 
Whitney could not reasonably foresee that Southington later would open the area on and around the former landfill site for development. When those decisions later were made by Southington, Pratt Whitney had no role or involvement.
The case of Accashian v. Danbury, 23 Conn.L.Rptr. No. 19, p. 656, 1999 Conn. Super. LEXIS 59 (Conn.Super.Ct. Jan. 8, 1999) (Hodgson, J.), is directly on point. In Accashian, corporate parties which had disposed of wastes at the Danbury municipal landfill were sued in negligence based on claims that the landfill had contaminated neighboring property. The court struck the claims of negligence against the users of the landfill, concluding that such claims failed both the foreseeability test and the public policy test:
 The first [test], foreseeability, would be satisfied only if an entity paying a fee to deposit waste at a CT Page 5871 public refuse facility should be expected to investigate the manner in which the municipality operates the facility and foresee that the materials it is accepting will not be stored or processed in an appropriate manner. . . .
 It does not seem reasonable, as a matter of law, to impose on a user of a regulated facility the task of foreseeing that the municipality will fail in its duties to comply with applicable standards and to take applicable precautions regarding the waste it accepts and of further foreseeing that managing authorities or regulatory authorities will fail to detect or prevent noncompliance.
. . .
 The plaintiffs' claim also fails the public policy test. It is not the public policy of this state to impose on entities disposing of wastes a duty to oversee and regulate the operation of the facilities where the wastes are accepted. Rather, the statutes impose those duties on various environmental protection officials and boards.
Accashian, 1999 Conn. Super. LEXIS 59, *5-*7.
The Complaint does not contain any facts to support an inference that Pratt Whitney had any reason to foresee that Southington would not operate, maintain, or close the landfill properly. Pratt Whitney had no reason to foresee the alleged post-closure actions by Southington to permit or encourage the development of areas on and around the former landfill. Furthermore, the alleged actions or omissions by Southington were not within the scope of any risk reasonably created by any alleged negligence of Pratt Whitney. As a matter of public policy, this court cannot impose upon Pratt Whitney the duty to have anticipated such events decades ago, when Pratt Whitney (like many others) simply used the landfill. Accordingly, because Pratt Whitney cannot be said to have owed a duty of care to these remote future plaintiffs during the time when Pratt Whitney used the landfill, the First Count claim of "negligent disposal" against Pratt Whitney is ordered stricken.
To the extent the First Count also may be construed to include claims that Pratt Whitney had any common law duty to the plaintiffs arising or continuing sometime after the landfill closed in 1967, the plaintiffs also fail to state a claim. Paragraphs 16-18 of the First Count (pp. 5-6) CT Page 5872 assert, in conclusory fashion, that Pratt Whitney "knew," or was "aware," or "should have been aware" of the manner in which Southington closed the landfill, and of the post-closure development and uses subsequently permitted by Southington in the area of the former landfill. A bare assertion that the defendant "knew or should have known" something is simply a claim of negligence, not a sufficient allegation of fact. Ruocco v. United Adver. Corp., 98 Conn. 241, 244, 119 A. 48
(1922); Jerez v. City of Danbury, 2000 Conn. Super. LEXIS 2238 (Conn.Super.Ct. Aug. 25, 2000) (Moraghan, J.). Although plaintiffs allege broadly that "the defendants" were negligent in that "they permitted and actively encouraged people . . . to live and work on and around the Site" (First Count ¶ 59(e) (p. 18)), there is absolutely no factual allegation supporting any conclusion that Pratt Whitney was involved in such matters. Conclusory assertions in a pleading, not supported by sufficient allegations of fact, are not sufficient to withstand a motion to strike. Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368
(1985); Fortini v. New England Log Homes, Inc., 4 Conn. App. 132,134-35, 492 A.2d 545 cert. dism'd, 197 Conn. 801, 495 A.2d 281 (1985);P.R.I.C.E. Inc. v. Keeney, 1998 Conn. Super. LEXIS 2018, *30-*31 (Conn.Super.Ct. July 9, 1998) (Hale, J.) (claim of strict liability stricken where sufficient supporting facts not pleaded).
The gravamen of plaintiffs' post-1967 claims against Pratt Whitney is that Pratt Whitney became aware of problems with the landfill sometime after 1979, but failed to warn the plaintiffs. See First Count ¶¶ 47, 59(d) (pp. 14, 17). These allegations do not state a claim against Pratt Whitney in negligence, because Pratt Whitney had no common law duty to the plaintiffs. Courts generally will not impose a continuing duty in negligence unless there is evidence of a special relationship between the parties. See e.g., Blanchette v. Barrett, 229 Conn. 256, 275, 640 A.2d 74
(1994) (doctor-patient relationship); Starkweather v. Patel,34 Conn. App. 395, 400-02, 641 A.2d 809 (1994) (same). Even where a defendant initially may have been negligent in the performance of some act, the defendant generally has no continuing duty to warn. See Barthav. Waterbury House Wrecking Co., 190 Conn. 8, 13,459 A.2d 115 (1983) (no continuing duty of contractor to safeguard large hole left on construction site); Sanborn v. Greenwald, 39 Conn. App. 289, 297,664 A.2d 803 (1995) (no continuing duty to warn of negligently prepared stipulation); Nardi v. AA Elec. Sec. Eng'g, Inc., 32 Conn. App. 205,213, 628 A.2d 991 (1993) (no continuing duty to warn of negligently installed phone jack).
To the extent that the First Count might be interpreted as a claim by the plaintiffs that Pratt Whitney failed to warn them aboutSouthington's alleged negligence, either before or after 1967, the plaintiffs also fail to state a claim. A defendant generally does not have CT Page 5873 a duty to warn others of the dangers posed by third parties. See Fraserv. U.S., 236 Conn. 625, 627, 674 A.2d 811 (1996) (no duty of medical center to control outpatient to prevent harm to third parties); Kaminskiv. Fairfield, 216 Conn. 29, 37, 578 A.2d 1048 (1990) (parents have no duty to warn police officer of child's violent propensity).
Due to Pratt Whitney's lack of a common law duty running to the plaintiffs either before or after 1967, the First Count of the Complaint is ordered stricken as to Pratt Whitney.
Fourth Count — Nuisance
In the Fourth Count, the plaintiffs attempt to pursue a private nuisance claim against both Southington and Pratt Whitney. The plaintiffs allege that Southington "owned and operated" the landfill; First Count ¶ 6; and that Southington "stored and disposed of' wastes from various residential, commercial and industrial sources. Id. ¶ 8. Pratt Whitney, along with others, simply "used" the landfill for disposal of its wastes. Id. ¶ 10. The plaintiffs allege that both defendants "created" the nuisance "by permitting harmful materials to spread onto and into Plaintiffs' property in an unreasonable manner." Fourth Count ¶ 64 (p. 29). The plaintiffs allege generally that the harms that they claim to have suffered "were caused by the nuisance created, permitted, continued and/or maintained by the Defendants. . . ."Id. ¶ 65 (p. 30).
In a nuisance case, control over the land claimed to be a nuisance is an essential requisite to liability. State v.Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177, 185, 527 A.2d 688
(1987) (trial court did not err in refusing to submit nuisance claim to jury, where no evidence to suggest defendant had control over land, even if pleadings considered in light most favorable to plaintiff); Lomanginov. LaChance Farms, Inc., 17 Conn. App. 436, 438-39, 553 A.2d 197 (1989). Where a defendant exercises no control over the land at issue, the court may strike a nuisance count. See Wiehl v. Dictaphone Corp., 1994 Conn. Super. LEXIS 44, *3 (Conn.Super.Ct. Jan. 12, 1994) (Maiocco, J.) (granting motion to strike nuisance count against former lessee for disposal of hazardous wastes, where no control over land shown).
Here, the plaintiffs do not allege that Pratt Whitney actually exercised control over the landfill. Although the Fourth Count purports to claim broadly that both defendants "created" or "maintained" a nuisance, that allegation is insufficient. It is clear from the complaint that Southington operated and controlled this landfill as a public refuse disposal facility and a municipal service. See Wood v. Wilton,156 Conn. 304, 310, 240 A.2d 904 (1968). In the Tippetts case, supra, the CT Page 5874 defendants had contracted with the State of Connecticut to maintain the Mianus River Bridge, portions of which collapsed in 1983.204 Conn. at 178-79. The State alleged that, by failing to properly construct and maintain the bridge, the defendants had created a nuisance. Id. The Supreme Court held that while the defendants were delegated a degree of control over the bridge for purposes of construction and maintenance, the "ultimate" control over the bridge was always with the State, and thus the defendants were not liable in nuisance. Id. at 186. Here, since control over the Southington landfill always rested with its owner and operator, the Town of Southington, Pratt Whitney cannot be liable in nuisance as a matter of law. The Fourth Count is ordered stricken as to Pratt Whitney.
Fifth Count — Trespass
In the Fifth Count, the plaintiffs claim trespass, alleging that unidentified toxic and hazardous substances "escaped" from the landfill and migrated to the plaintiffs' property. Fifth Count ¶ 62 (p. 31). The essential elements of a trespass are: (1) the plaintiff's ownership or possessory interest in the land; (2) an invasion by the defendant which affects the plaintiff's ownership or possessory interest; (3) that such invasion was "done intentionally"; and (4) damages. See AbingtonLtd. P'ship v. Talcott Mountain Science Ctr. for Student Involvement,Inc., 43 Conn. Sup. 424, 427 (Super.Ct. 1994). Here, plaintiffs fail to plead the intentionality element. "The intention required to make the actor liable for trespass is an intention to enter upon the particular piece of land in question." Ike's Auto Body, Inc. v. Martin, 1995 Conn. Super. LEXIS 3628 *13 (Conn.Super.Ct. Dec. 22, 1995) (Pickett, J.);see also Kramer v. Ordway, Conn. Super. LEXIS 3082, *3 (Conn.Super.Ct. Nov. 30, 1994) (Lewis, J.) ("[I]n order to be liable for trespass, one must intentionally cause some substance or thing to enter upon another's land"); Caltabiano v. Jimmo, 1995 Conn. Super. LEXIS 1334, *19 (Conn.Super.Ct. May 5, 1995) (Higgins, J.) (intent to do that which causes the invasion is a required element of trespass).
An intrusion on the land of another as a result of negligence is not a trespass. Walsh v. Stonington Water Pollution C'ontrol Auth., 1996 Conn. Super. LEXIS 1461 (Conn.Super.Ct. June 5, 1996) (Hurley, J.) (granting summary judgment). Even where EPA and DEP are alleged to have issued notices of environmental violations to the defendant, a claim based on trespass may be stricken for failure to show the requisite intent. Matherv. Birken Mfg. Co., 1998 Conn. Super. LEXIS 3669 (Conn.Super.Ct. Dec. 8, 1998) (Hennessey, J.). In Accashian v. Danbury, 1999 Conn. Super. LEXIS 59 (Conn.Super.Ct. Jan. 8, 1999) (Hodgson, J.), the City of Danbury and several corporations which had used the city landfill to dispose of wastes were sued for trespass because chemicals allegedly CT Page 5875 leached from the landfill onto the plaintiffs' neighboring properties. The court granted the corporate defendants' motion to strike the trespass claim, holding that a user of a municipal landfill cannot be liable in trespass.
 Since the corporate defendants are not alleged to have operated the landfill or decided how their materials were to be handled or processed, they cannot be said to have had any basis for certainty, substantial or otherwise, as to the likelihood that any substance from their materials would invade neighboring properties by air or water or soil.
 Accashian, 1999 Conn. Super. LEXIS 59, at *9-*10.
Here, plaintiffs broadly allege that the defendants "caused and allowed" substances to escape from the landfill. Fifth Count ¶ 62 (p. 31) The plaintiffs also allege that the escaping substances included "vapors" (Fifth Count ¶ 62 (p. 31)), but a claim relating to "vapors" does not lie in trespass. A trespass claim must allege the invasion of plaintiff's property by tangible matter. See Abington Ltd. Partnership,43 Conn. Sup. at 428 ("Generally, all intangible intrusions, such as noise, odor, or light [alone], are dealt with as nuisance cases, not trespass"); Kramer v. Ordway, supra, 1994 Conn. Super. LEXIS 3082, *3 ("[I]t is generally held that intrusion of the property be physical and accomplished by a tangible matter"); Pestey v. Cushman, 1994 Conn. Super. LEXIS 3275, *9 (Conn.Super.Ct. Dec. 15, 1994) (Hurley, J.) (rejecting a trespass claim based on farm odor, court held that, "[a]bsent some direct or indirect physical invasion or deposit of some substance onto the Pesteys' land, there is no recognizable action in trespass").
The plaintiffs also allege, without factual elaboration, that the defendants "knew or in the exercise of reasonable care should have known" that substances "released from the Site would enter the land of others, including the plaintiffs." Id. ¶ 63. The plaintiffs cannot satisfy the element of intent based only upon these conclusory allegations.Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985); Fortini v. New EnglandLog Homes, Inc., 4 Conn. App. 132, 134-35, cert. dism'd, 197 Conn. 801
(198). A bare assertion that a defendant "knew or should have known" something is a claim of negligence only, not a factual allegation of actual knowledge. Ruocco v. United Advertising Corporation, 98 Conn. 241,244 (1922); Jerez v. City of Danbury, 2000 Conn. Super. LEXIS 2238 (Conn. Super Ct. Aug. 25, 2000) (Moraghan, J.).
The plaintiffs have not pleaded any facts which would support a CT Page 5876 conclusion that Pratt Whitney intended, prior to 1967, that wastes which Pratt Whitney disposed of at the landfill would migrate to the property of these remote future plaintiffs decades later. Indeed, by plaintiffs' own allegations, it was not until "[b]etween 1979 and 1983" that the defendants first "learned" that substances from the former landfill allegedly were affecting other properties. First Count ¶ 48 (p. 14). Because plaintiffs have not plead the required element of intent as to Pratt Whitney the Fifth Count is ordered stricken as to Pratt 
Whitney.
Sixth Count — Strict Liability
In the Sixth Count, the plaintiffs claim that the "handling, burning, burying and disposing" of unspecified "toxic and hazardous substances" at the landfill prior to 1967 was "an ultra-hazardous activity" for which the defendants should be strictly liable. Sixth Count ¶¶ 62, 65 (pp. 34, 35).
To prevail in a claim of strict liability under Connecticut law, a plaintiff must prove, among other things, that the defendant engaged in activity that was so dangerous it was unsafe even with the exercise of due care. Specifically:
 To impose liability without fault, certain factors must be present: an instrumentality capable of producing harm; circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed.
Caporale v. C. W. Blakeslee Sons, Inc., 149 Conn. 79, 85, 175 A.2d 561
(1961) (emphasis added).
Connecticut courts have applied the factors listed in the Restatement (Second) of Torts to determine whether an activity is abnormally dangerous so as to give rise to strict liability. Those factors are the:
 (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of CT Page 5877 the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.
Green v. Ensign-Bickford Co., 25 Conn. App. 479, 486, 595 A.2d 1383
(1991) (emphasis added) (quoting Restatement (Second) of Torts § 520).
The Connecticut Appellate and Supreme Courts have recognized abnormally dangerous activity giving rise to strict liability only with respect to blasting, pile driving and research with explosives. See, e.g., WhitmanHotel Corp. v. Elliott Watrous Eng'g Co., 137 Conn. 562, 565, 79 A.2d 591
(1951) (blasting); Caporale, 149 Conn. at 85-86 (pile driving); Green,25 Conn. App. at 482-83 (research with explosives).
In Accashian v. City of Danbury, No. X01 CV-97-0147228-S, 1999 Conn. Super. LEXIS 36 (Conn.Super.Ct. Jan. 6, 1999) (Hodgson, J.), the court held that operation of a landfill is not ultrahazardous because "[s]tate and regulatory schemes suggest that these [disposed] materials do not pose a hazard if handled properly." Id. at *20-21 (citing Conn. Gen. Stat. §§ 22a-114 through 134q). Judge Hodgson articulated that conclusion three times in consideration of the Accashian litigation. See
1999 Conn. Super LEXIS 59, at *7-8 (Conn.Super. Jan. 8, 1999); 2000 Conn. Super. LEXIS 168, at *4 (Conn.Super.Ct. Jan. 27, 2000); and 1999 Conn. Super. LEXIS 36, supra. injury," Id. at *17.
Other courts have reached the same conclusion with respect to storage of hazardous materials. See, e.g., Goodrich v. Jennings, No. 150074, 1997 Conn. Super. LEXIS 1399, at *7-8 (Conn.Super.Ct. May 22, 1997) (Mintz, J.) (storage of gasoline in an underground tank is not an ultrahazardous activity); Nielsen v. Sioux Tools, Inc., 870 F. Sup. 435,442 (D.Conn. 1994) (refusing to impose strict liability for leaking underground tank); Arawana Mills Co. v. United Techs. Corp.,795 F. Sup. 1238, 1251 (D.Conn. 1992) ("I am persuaded that if given the opportunity to expand the narrowly-construed concept of `ultrahazardous' or `abnormally dangerous' activity to storage and use of hazardous wastes, the Connecticut Supreme Court would decline to do so."); Bernbach v. Timex Corp., 989 F. Sup. 403, 407 (D.Conn. 1996) (declining to extend strict liability to the handling of hazardous wastes).
 The plaintiffs allege that the disposal of toxic and hazardous materials
 was an ultra-hazardous activity, subjecting persons coming into contact with said substances and materials CT Page 5878 to a severe risk of personal injury, regardless of the degree of caution they might have exercised.
(Sixth Count, ¶ 62) In other words, they plead that the OSL should be found to be ultrahazardous because it involved materials that would cause severe harm to those who come into contact with the materials, regardless of the care exercised by such people prior to coming into contact with the harmful materials. That is not the test for determining whether an activity is ultrahazardous in Connecticut. Rather, the plaintiffs must plead and prove that a landfill cannot be operated safely regardless of the exercise of due care by the landfill operator. This proposition has been rejected in Connecticut. See Accashian, supra. There is simply no basis for an argument that landfills will probably cause harm even where operated in accordance with appropriate operating procedures and regulations.
Strict liability applies only to activities that entail an obvious risk of probable harm, under the theory that a defendant who chooses to engage in such obviously dangerous activity must be prepared to pay compensation for any resultant harm. The doctrine is inapplicable to a circumstance in which an activity was not known to be dangerous at the time it was undertaken but is only alleged to have been dangerous years after the fact.
The Connecticut Supreme Court explained the doctrine as follows:
 In all of these situations danger may be foreseen by reasonable men, as possible if not probable, but the risks to others are not by the ordinarily prudent man, regarded as unreasonable. It is precisely these conditions which give rise to the doctrine of strict liability.
Whitman Hotel Corp. v. Elliott Watrous Eng'g Co., 137 Conn. 562, 567,79 A.2d 591 (1951) (emphasis added). In such a situation,
 [a] person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the person of another to the danger of probable injury, is liable if such injury results, even though he uses all proper care.
Id. at 565.
In all circumstances in which strict liability has been applied by Connecticut's appellate level courts, the danger was obvious to the CT Page 5879 defendant at the time of the disputed action. In Caporale, the defendant drove heavy steel piles with a pile driver for four months within seventy-five feet of the plaintiff's concrete-block buildings, and "actually anticipated [the potential damage] when it inspected premises nearby before it began work." 149 Conn. at 85-86. In Whitman Hotel, the defendant "discharged many hundreds of blasts of . . . dynamite . . . in close proximity to a number of compactly located business buildings."137 Conn. at 564. In Green, the defendant's employees were experimenting with explosives. 25 Conn. App. at 481.
In order to state a claim against Pratt Whitney for strict liability the plaintiffs must plead facts supporting a conclusion that the particular circumstances and conditions of Pratt Whitney's use of the Southington municipal landfill prior to 1967 were such that Pratt 
Whitney was engaging in conduct which "necessarily or obviously" created a high risk of unavoidable harm. Whitman, 137 Conn. at 565.
Here, the plaintiffs have not alleged any facts concerning the particular "circumstances or conditions" of Pratt Whitney's use of the Southington landfill in the decades prior to 1967. There are no factual allegations supporting a conclusion that Pratt Whitney knew, prior to 1967, that its conduct in disposing of wastes in Southington would have posed a "high degree of risk of harm." Restatement (Second) of Torts § 520(a). The plaintiffs themselves state that it was not until "[b]etween 1979 and 1983" that the defendants "learned" of contamination allegedly affecting properties away from the former landfill site. First Count ¶ 48 (p. 14). From the allegations of the complaint, therefore, it is not possible to conclude that any industrial user of the Southington landfill prior to 1967 would have been engaging in an activity that "necessarily or obviously expose[d] the person of another to the danger of probable injury." Whitman Hotel, 137 Conn. at 565
(emphasis added). For the foregoing reasons the Motion to Strike the Sixth Count is granted.
Seventh Count — Fraud
The Seventh Count of the Revised Complaint purports to state a claim for common law fraud. Most, if not all, of the allegations are directed against Southington; the plaintiffs refer to various times between the 1970s and 1993 when the Town allegedly made statements or allegedly failed to disclose information. Plaintiffs claim generally that the Town "implied by its actions and affirmatively advised invitees and the public, including the Plaintiffs, that no danger condition existed on or around the Site" of the former landfill. Seventh Count ¶ 68 (p. 37). Plaintiffs claim that Southington "did not disclose the dangers of the Site to the public, nor did it disclose the health risks and dangers to CT Page 5880 those residents of the Town who were living . . . adjacent to the Site."Id. ¶ 72 (pp. 38-39). Plaintiffs also allege that "the Town, in January, February and March, 1993, indicated that the adjacent areas, including those of the Plaintiffs were not affected by the contamination in the landfill and that there is no risk to the residences herein [sic]." Id. ¶ 77 (p. 40). Plaintiffs further allege that the Town Manager "disagreed with the amount of contamination on the Site" and that "on July 1, 1993 the . . . Town Manager, indicated that there was no health hazard." Id. ¶¶ 73, 75 (p. 39). Only two paragraphs in the Seventh Count mention Pratt Whitney. Paragraph 75 (p. 39) alleges, in pertinent part: "The Defendants Pratt Whitney and the Town of Southington stated on July 8, 1993 that the State of Connecticut, Department of Public Health Service Report overstated the risk attributable to landfill gases. . . ." This is followed by paragraph 76 (pp. 39-40), which reads in full as follows:
 Again, on July 8, 1993, the Town of Southington, speaking for the Town and for Pratt Whitney, indicated that the Department of Health Service Report characterization of the former landfill as a public health hazard was misleading and that the report overstated the risk to the residents.
A cause of action for common law fraud requires the plaintiff to establish four distinct elements. They are: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." Weisman v. Kaspar, 233 Conn. 531, 540, 661 A.2d 550
(1995) (citations omitted).
When interpreted in a manner most favorable to the plaintiff, the Seventh Count is sufficient to state a cause of action against Pratt 
Whitney for Fraud. Therefore, the Motion to Strike the Seventh Count is denied.
Eighth Count — Negligent Infliction of Emotional Distress
In the Eighth Count, the plaintiffs again attempt to allege a claim of negligence in connection with post-1967 events. The Eighth Count purports to state a claim for negligent infliction of emotional distress. Plaintiffs allege that the "Defendants have known since 1979 that the contamination at the Site constituted a severe health hazard . . .," but that the defendants "took no steps to promptly relocate the Plaintiffs from the Site, and in fact . . . consistently advised the Plaintiffs and others the health risk (sic), and permitted the Plaintiffs and others to CT Page 5881 use and/or occupy the Site. . . ." Eighth Count ¶ 87 (pp. 43-44).
To recover on a claim for negligent infliction of emotional distress, a plaintiff must show that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Montinieri v. Southern New England Tel. Co., 175 Conn. 337, 345,398 A.2d 1180 (1978); Barrett v. Danbury Hospital, 232 Conn. 242, 260,654 A.2d 748 (1995). When the emotional distress is claimed to be based on fear of future illness, a plaintiffs fear must be objectively reasonable when compared against the defendant's conduct. See Barrett,232 Conn. at 261. The plaintiff must present sufficient facts to demonstrate the objective reasonableness of the fear. Id. at 262 (affirming defense summary judgment where plaintiff failed to show that alleged fear was reasonable). In the present case, although plaintiffs claim that Pratt Whitney's "conduct" was unreasonable (Eighth Count ¶ 88 (p. 44)) and caused the plaintiffs to suffer distress, the gravamen of the claim is not Pratt Whitney's affirmative "conduct" but rather the absence of action by Pratt Whitney with regard to the plaintiffs.
There is no authority for the claim that some twenty years after Pratt Whitney last used the OSL for the disposal of substances that it did not then know were hazardous, Pratt Whitney had a common law duty to "relocate" the plaintiffs, to prevent them from living or working in the area, or otherwise to intervene in their situation. Negligence cannot be predicated upon failure to perform an act which the actor was under no duty to perform. Behlman v. Universal Travel Agency, Inc.,4 Conn. App. 688, 691, 496 A.2d 962 (1985). Therefore, the Motion to Strike the Eighth Count as to Pratt Whitney is granted.
By the court,
Aurigemma, J.